SUMMERS, Justice.
 

 Plaintiff Dorothy Craker instituted this tort suit to recover damages for personal injuries .and medical expenses resulting from a collision between a 1965 Dodge automobile owned and driven by Albert Lancon, in which she was a'guest passenger, and a large trailer truck, whose driver and owner are unknown. It is a direct action against Allstate Insurance Company, the liability insurer of Lancon’s 1965 Dodge.
 

 After a jury trial, a verdict was rendered in plaintiff’s favor for $750, the award including personal injuries, pain and suffering and medical expense. On appeal, the Third Circuit increased the award to $5,000, the limit of the policy coverage. 239 So.2d
 
 184. We
 
 granted
 
 review on
 
 Allstate’s application. 256 La. 909, 240 So.2d 373.
 

 Plaintiff testified that at approximately four o’clock on the morning of May 4, 1967 she was riding as Lancon’s guest in the right front seat of the Dodge. The scene was a country road with no street lights, and it was raining. They were traveling on the old Jeanerette highway from Jeanerette to New Iberia. Plaintiff had been sleeping about fifteen minutes and was asleep at the time. She was awakened by the collision of the Dodge with a large object. She was thrown violently forward by the impact, her head striking the windshield. The blood gushed from a large wound on her forehead, streaming into her eyes, but in the blur she observed a truck fleeing the scene. To the best of her knowledge the truck had no lights and was stopped in the roadway at the time of the impact.
 

 
 *581
 
 Lancon was able to start his automobile, and he took plaintiff to a motel where she remained until that afternoon. Then she went to Charity Hospital in Lafayette where the wound was sutured. Other medical treatment followed.
 

 Lancon did not testify at the trial, and his deposition was not taken. Plaintiff’s subpoena for him to appear and testify was returned with the notation that he was in Alaska.
 

 From the facts thus disclosed in the record, the Court of Appeal observed: “Essentially all that Miss Craker was able to prove concerning the accident is that Lancon was driving the car, and that it collided with the rear of a truck.” The Court then conchtded:
 

 But we believe that this was sufficient, under the laws of this state, to make out a prima facie case of negligence on the part of Lancon * * * under the Saia rule (Louisiana Power & Light Co. v. Saia, 188 La. 358, 177 So. 238 [1937]). Allstate then incurred the burden of proving that its insured was within the
 
 Vozvell
 
 exception. (Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So.2d 909 [1956]). This they have not done; the only witness called by Allstate was Miss Craker, and she was asleep prior to the collision.
 

 We do not agree with this conclusion.
 

 In the Saia Case plaintiff sued for property damage sustained by its vehicle allegedly because it collided on the highway with an unlighted, parked truck and trailer belonging to defendant. The case was decided on an exception of no cause of action filed by the defendant; the Court reasoning that it affirmatively appeared from the allegations of plaintiff’s petition that its driver was guilty of contributory negligence because the sole and only reason given for not seeing the parked truck and trailer was that “it was quite dark.”
 

 Recognizing the statutory mandate that vehicles operated at night must have headlights making objects clearly discernible within 200 feet, the Saia Court concluded that a motorist is held “to have seen an object, which, by ttse of ordinary care and prudence, he should have seen in time to avoid running into it and that the driver of an automobile is guilty of negligence in driving at a rate of speed greater than that which he could stop within the range of his vision.” The Court reasoned that since plaintiff did not amend its petition, which it could have done, to allege any unusual circumstance which might have confused the driver or prevented him from seeing the parked vehicle, the allegations before it demonstrated contributory negligence.
 

 . The rule applied in the Saia Case that a motorist is held to have seen an object
 
 *583
 
 which by the use of ordinary care and prudence he should have seen is not without exceptions as the evolution of the rule in subsequent cases demonstrates. Tate, Law-Making Function of the Judge, 28 La.L.Rev. 211 (1967); Malone, Torts and Workmen’s Compensation, 19 La.L.Rev. 334 (1958) and 18 La.L.Rev. 63 (1957). The so-called “range of vision” or “assured clear distance” rule has proven unworkable and unrealistic with modern vehicles on modern highways.
 

 In Vowell v. Manufacturers Casualty Ins. Co., 229 La. 798, 808, 86 So.2d 909, 913 (1956), we defined exceptions to the rule in these words:
 

 Our rule that a motorist traveling on the public highway after dark or during a rainstorm, or other abnormal conditions, which prevents him seeing ahead, except imperfectly, and for a short time and distance, must guard against striking objects in the road with which he may be suddenly confronted, constitutes an * * * exception to the general rule is itself subject to the exception that a motorist traveling by night is not charged with the duty of guarding against striking an unexpected or unusual obstruction, which he had no reason to anticipate he would encounter on the highway.
 

 As a logical sequence to the attitude expressed in the Vowell 'Case, the Court’s holding in Suire v. Winters, 233 La. 585,. 592, 97 So.2d 404, 406 (1957), further relaxed the “assured clear distance” rule:
 

 * * * no hard and fast rule can be laid down, but the surrounding circumstances and facts bearing on this particular case necessarily must be considered. The duty to use reasonable care for the safety of others places the operator of a motor vehicle under continuing duty to keep a proper lookout for other vehicles which may be properly parked along the road as required by statute or dictated prudence. However, although it is the duty of a motorist to have his car under such control that he can bring his vehicle to a stop within his range of vision, the standard the law gives us to ap’ply is that to be exercised by a reasonably prudent motorist under a given set of facts and circumstances then prevailing and not that exercised by imaginary ideal motorists.
 

 Stated another way, “ * * * all that has been asserted is that the reasonable man foresees certain dangers, others he does not. Which ones are foreseeable is a question that has to be answered by common sense, on the basis of the circumstances in each case. It cannot be nailed down by specific rules, no matter how detailed.” Robertson, Conclusions of Fact in Civil Cases, 29 La.L.Rev. 78 (1968). See also Gaienne v. Cooperative Produce Co., 196 La. 417, 199 So. 377 (1940); Woodley & Collins v. Schuster’s Wholesale Produce
 
 *585
 
 Co., 170 La. 527, 128 So. 469 (1930); Albright v. Tatum, 37 So.2d 888 (La.App. 1948); Herring v. Holicer Gas Co, 22 So. 2d 868 (La.App.1945).
 

 Thus the court has come to recognize that it does not follow from the statutory-requirement fixing the range of headlights (La.R.S. 32:301-321) that a motorist is negligent for striking a vehicle from the rear. Too many circumstances can occur which can reasonably justify a motorist in failing to stop in time to avoid striking a vehicle from the rear. Although an object may be discernible within the range of the headlights, it is often difficult to tell if it is moving or not; oncoming lights may impair the motorist’s vision; a vehicle in clear view may stop suddenly and countless other' fact situations motorists encounter on today’s busy highways may affect their responsibility.
 

 The old rule literally applied is no longer a practical or fair regulation for the nighttime speed of modern drivers of modern cars on our highways. Consequently the rule has been modified to incorporate this realization and to exact a standard of care of the. nighttime driver based upon the broad requirement of reasonableness, a formula of negligence where there are few absolute rules and one requiring a careful consideration of all circumstances surrounding each case.
 

 The evolution of the “assured clear distance” • rule we have noted does not relieve the plaintiff of the obligation to prove with legal certainty, by a preponderance of the evidence, the acts of negligence charged against a defendant. This Court has long recognized the rule to be:
 

 To recover damages for injuries sustained through the alleged fault of another, the fault, and the connection between the fault and the injuries must be shown, with reasonable certainty. There can be no recovery where only the possibility or probability, of such fault '-and connection is shown. (Rohr v. New Orleans Gaslight Co, 136 La. 546, 554, 67 So. 361, 364 [1915]). See also Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 [1964]).
 

 Plaintiff has merely shown by her evidence that there is a possibility that the defendant may have been negligent. Plaintiff must show more than this; and, obviously, because she was asleep, her testimony alone could not furnish the requisite proof. She concedes by her testimony that she could not say that defendant was or was not keeping a proper lookout or that he was or was not driving at a legal speed.
 

 We are unable to say that in all cases a nighttime motorist who strikes a vehicle from the rear on a rainy night is negligent per se. To prove the collision alone, therefore, is not enough. The contention that we should award damages on that basis ig
 
 *587
 
 ñores, this Court’s recognition that a driver may collide with a vehicle in his path at night and not violate standards of reasonable conduct under the circumstances.
 

 Res ipsa loquitur is inapplicable here. A mere restatement of this rule suffices to support this conclusion:
 

 It is fundamental that negligence is never presumed from the happening of an accident, but the happening of an accident with its attendant circumstances may justify the inference of negligence * í{í !|S
 

 * * * * * *
 

 It is the duty of the plaintiff to prove the negligence affirmatively; and, while the inference allowed by the rule of res ipsa loquitur constitutes such proof, it is only where the circumstances leave no room for a different presumption that the rule applies. When it is shown that the accident might have happened as the result of one of two causes, the reason for the rule fails and it cannot be invoked. (Morales v. Employers’ Liability Assurance Corp., 202 La. 755, 766, 12 So.2d 804, 808 [1943]).
 

 For the reasons assigned, the judgment of the Court of Appeal is reversed, and plaintiff’s suit is dismissed at her cost.
 

 SANDERS and BARIiAM, JJ., concur iq,tlie .result.
 

 TATE, J., dissents and assigns written reasons.
 

 TATE, Justice
 

 (dissent).
 

 I respectfully dissent.
 

 The majority opinion is to be commended greatly for its final interment of the much-criticized "assured clear distance” rule. See Malone, 19 La.L.Rev. 234 (1958), 18 La.L.Rev. 68 (1957), 17 La.L. Rev. 346-348 (1957). So often mechanically applied, this rule resulted in the automatic denial of recovery to an overtaking motorist simply because he failed to see a stopped vehicle in his path.
 

 However, in the writer’s opinion, the majority has now gone to an unrealistic opposite extreme. It holds that a driver who strikes an object in his path is not negligent, unless it is positively proved he did not have the reasonable opportunity of observing such obstruction. This, I submit, overlooks the normal burden of lookout and care of a driver on our highways.
 

 A driver should
 
 normally
 
 observe obstructions in his path and should
 
 normally
 
 be able to slow or swerve so as to avoid the obstruction. Failure to observe this duty of lookout and care, under the cases cited by the majority, may be excused when, under modern conditions of travel, the driver could not reasonably have observed and avoided the object illegally ob
 
 *589
 
 structing his way. But we do not need to go further and hold that a driver may run into an object in his path, unless it is proved he
 
 could
 
 have observed and avoided such object.
 

 In the present case, the plaintiff was a front-seat passenger in the driver’s car. She was sleeping as the automobile, proceeding at 4:15 in the morning, struck a vehicle in the roadway. It is well settled that a passenger has no duty of lookout and that the passenger is entitled to rely upon the driver’s lookout and care. White v. State Farm Mut. Auto Ins. Co., 222 La. 994, 64 So.2d 245 (1953).
 

 This passenger was injured through the sudden collision of her driver with a vehicle ahead. The accident happened on a country road. The driver was not called to testify nor deposed to explain why he hit the object in his path.
 

 Nevertheless, the majority denies this passenger recovery because she did not prove that the driver was
 
 not
 
 excused from seeing the object ahead on this country road.
 

 I respectfully suggest that the majority holding is in conflict with the innumerable decisions and the commonsense conclusion to the effect that a motorist who strikes another vehicle from the rear is presumed to be negligent. Such driver must exculpate himself from the prima facie case of negligence on his part created upon proof that he struck a vehicle in his path. See 3 West’s Louisiana Digest “Automobiles”, <®=>172(7) and 242(2), citing such decisions as Landry v. Meligan, 245 So.2d 782 (La. App.3d Cir. 1971), Prudhomme v. Dore, 223 So.2d 474 (La.App. 1st Cir. 1969), Sutton v. Travelers Indemnity Co., 210 So.2d 186 (La.App.2d Cir. 1968), and Viator v. Gilbert, 206 So.2d 106 (La.App. 4th Cir. 1968).
 

 Because the foregoing adequately states the reasons for my dissent, I do not here advert to the real possibility that
 
 both
 
 the defendant’s driver
 
 and
 
 the operator of the obstructing vehicle might be negligent. When an innocent party (the passenger, here) is injured through the concurrent acts of two parties under circumstances where one or the other must be at fault, the burden is upon these parties to exculpate themselves from negligence. Gauthreaux v. Hogan, 185 So.2d 44 (La.App. 4th Cir. 1966) and decisions therein cited.
 

 In passing, we might further note that the driver’s duty to his innocent passenger may be greater than the duty he owes to a party illegally obstructing the highway. Such latter duty is not necessarily determinative of his obligation to pay for damages sustained by his passenger. See: Wortham v. Owens, 200 So.2d 781 (La.App.3d Cir. 1967); Vander v. New York Fire & Marine Underwriters Inc., 192 So.2d 635, 640 (La.App.3d Cir. 1966); Eubanks v. Wilson, 162 So.2d 842, 848 (La.App.3d Cir.
 
 *591
 
 1964); Restatement of Torts, 2d, Section 281(b).
 

 With regard to the present case, it seems to me that the defendant had the obligation of 'producing the testimony of its driver to exculpate himself from the presumption of fault arising under the circumstances of this 'case. It is unreasonable and unrealistic to place such burden upon the innocent passenger, injured through the unexplained «collision of the vehicle in which she was Tiding asleep.
 

 For these reasons, I respectfully dissent.