276 So.2d 874 (1973)
Nolan VESSEL et al., Plaintiffs-Appellees,
v.
ST. PAUL FIRE & MARINE INSURANCE CO., Defendant-Appellant.
No. 9216.
Court of Appeal of Louisiana, First Circuit.
April 9, 1973.
Donald S. Zuber, Seale, Smith & Phelps, Baton Rouge, for defendant-appellant.
Leslie D. Ligon, Jr., Clinton, for plaintiffs-appellees.
Before SARTAIN, BLANCHE and WATSON, JJ.
SARTAIN, Judge.
This is a direct action against St. Paul Fire & Marine Insurance Company, the professional liability insurer of Mr. Lannis A. Kircus, an attorney, for alleged malpractice on the part of its insured. For written reasons assigned, the District Judge held that Mr. Kircus was negligent in his handling of plaintiffs' claim and rendered judgment against the defendant in the amount of $10,000.00. The defendant has appealed and we reverse.
*875 The chronology of events leading up to the instant action is as follows: On or about April 21, 1969, Mrs. Bertha Vessell was fatally injured when she was struck by a vehicle driven by Mrs. Florence S. Foster. On July 10, 1969, the heirs of Mrs. Vessel retained the services of Mr. Kenneth C. Scullin to represent them in connection with the death of their mother. Mr. Scullin turned the matter over to Mr. Kircus, an associate in his office. On April 18, 1970, Mr. Kircus filed suit in the 20th Judicial District Court for the Parish of West Feliciana, which suit was entitled, "Nolan Vessel, as Administrator of the Estate of Bertha Vessel vs. Florence Foster, et al." and bore docket No. 4547. The pleadings therein were not filed in nor made a part of the record in the instant matter. However, the transcript of the testimony in Suit No. 4547 was introduced into evidence by stipulation. On the day suit No. 4547 was set for trial, October 23, 1970, Mr. Kircus filed a supplemental and amending petition naming as parties plaintiff the remaining nine surviving children of Mrs. Vessel. The defendants, Foster and Allstate, filed peremptory exceptions of prescription and pre-emption based on the propositions that (1) C.C. Art. 2315 does not permit an administrator of an estate to pursue wrongful death benefits on behalf of the surviving heirs of a decedent, and (2) that the supplemental and amending petition having been filed on October 23, 1970, more than one year following the date of the death of the decedent, the surviving heirs had lost their right of action. The trial judge referred the exceptions to the merits. When judgment was ultimately rendered, the exception as to the wrongful death claims was sustained[1] and plaintiffs' suit in this regard was dismissed with prejudice. However, judgment was rendered in favor of Nolan Vessel, as the Administrator of the Estate of Bertha Vessel, in the sum of $1,500.00, representing funeral expenses incurred as a result of the death of Mrs. Vessel. In his written reasons for judgment, the trial judge stated:
* * * * * *
"... The proximate cause of the accident ... was the negligence of Mrs. Foster and (the court) so holds. The court further finds that Mrs. Foster had the last clear chance to avoid the accident and Mrs. Vessel's negligence, if any, did not contribute proximately to the cause of the accident." (parentheses ours)
St. Paul was then advised of possible exposure under its policy for the failure of Mr. Kircus to include in the original suit the surviving children of Mrs. Vessel as proper parties plaintiff and thus permitting their claims to be subject to an exception of pre-emption. Prior to the expiration of delays for appealing the decision of the trial court, Mr. Kircus and Mr. Scullin declined to follow the directions of St. Paul to perfect an appeal as to that portion of the judgment which sustained the plea of pre-emption. Accordingly, that judgment became final.
The above events set the stage for the institution of the present action. It alleges that Mr. Kircus was negligent in the handling of the plaintiffs' claims for the wrongful death of their mother. The trial judge, for reasons stated above, found for the plaintiffs holding, inter alia, that Mr. Kircus was negligent and that plaintiffs were entitled to receive judgment against *876 St. Paul in the amount they would have received had their original claims been timely filed.
St. Paul has asserted several defenses. It claims that the plaintiffs are not entitled to the benefits of R.S. 22:655 (Louisiana's Direct Action Statute); that the action of Mr. Kircus in preparing the original petition did not constitute negligence on his part; alternatively, that in the event it did, coverage was voided by the actions of Mr. Kircus in refusing to follow the directions of St. Paul to appeal the first suit; and that they have the right to have the original decision of the trial judge on the question of liability of Mrs. Foster reexamined by us.
Inasmuch as we are of the opinion that plaintiffs do have a right to pursue their alleged claims in an action brought directly against St. Paul and that the trial judge committed manifest error when he held that Mrs. Foster had the last clear chance to avoid the accident, we do not have to address ourselves to the remaining issues raised by the defendant here. We shall discuss the latter two points in the order mentioned.

Direct Action
St. Paul argues that plaintiff has no right to a direct action on a policy for legal malpractice insurance. It contends that the law in this state is to the effect that actions for legal malpractice are suits on contracts, as the relationship of attorney to client is one of contract. Grand Isle Campsites, Inc. v. Cheek et al., 262 La. 5, 262 So.2d 350; Delta Equipment and Construction Co. v. Royal Indemnity Co., 186 So.2d 454 (1st La.App., 1966); Succession of Zatarain, 138 So.2d 163 (1st La.App., 1962); and Wadsworth v. Alexius, 234 La. 187, 99 So.2d 77. It is St. Paul's position that R.S. 22:655 applies only to tort actions authorized by C.C. Article 2315. Lacour v. Merchants Trust & Savings Bank, 153 So.2d 599 (4th La.App., 1963, writs refused, 244 La. 1004, 156 So.2d 56).
An examination of these cases will reveal that while the law therein expressed is correct, the facts in each are not apposite to and, therefore, can be distinguished from the instant case.
First, St. Paul argues that this present suit is one for breach of contract since the plaintiffs, by written agreement, hired Mr. Scullin to sue on their behalf. We do not agree with this proposition because plaintiffs brought suit not against Mr. Scullin for failure to bring an action on their behalf, but against Mr. Kircus's liability insurer for, having once instituted suit on their behalf, allegedly preparing the pleadings improperly which subjected their claims to a plea of pre-emption.
Grand Isle Campsites, Inc. was not a suit for malpractice and the Supreme Court adopted the reasons enunciated by this court in that case at 249 So.2d 268, wherein we absolved from liability an attorney accused of failing to disclose a secret profit being realized by the vendor of a tract of land on the grounds that no attorney-client relationship was found to exist. In Delta Equipment and Construction Co., the issue was whether an attorney was derelict in permitting a default judgment to be entered against the plaintiff for unpaid wages not covered under plaintiff's compensation policy. The trial judge held that plaintiff had failed to prove that the attorney had been engaged to protect him from such judgment. In Succession of Zatarain, the issue was whether an attorney designated by will to represent the decedent's executrix could transfer this right to another attorney. In Wadsworth, the issue was whether one co-owner of immovable property was the client of an attorney selected by the remaining co-owners. Thus it can be seen that in each of these cases the pivotal issue was whether or not a contract had been entered into for professional services. They are not suits for alleged legal malpractice. In none of these cases was the issue of the availability of a direct action raised or discussed.
*877 In Marchand v. Miazza, 151 So.2d 372 (4th La.App., 1963), the court recognized that claims against an attorney may be in tort or under a contract, but if in tort, the one year prescriptive period applied.[2] In Perkins v. Brown, 236 So.2d 579, this court stated that under C.C. Art. 2315, for there to be a cause of action, the plaintiff must suffer some loss or receive some damage. Judgment in favor of the defendant was affirmed on the grounds that the plaintiff had not been damaged by the action complained of.
In Ramp v. St. Paul Fire & Marine, 263 La. 774, 269 So.2d 239, the Supreme Court stated in the initial sentence of the majority opinion:
"Plaintiffs, four of the five children of John J. Ramp, Sr., brought this action in tort for damages allegedly sustained because attorneys who represented them earlier in their father's succession proceedings were negligent." (Emphasis ours)
The court held that the attorney's action was "gross error" which breached a legal duty he owed to the plaintiffs. The issue as to whether the plaintiffs therein could have proceeded directly against the defendant's professional liability insurer was not raised because the insureds were also joined as parties-defendants. However, the language in Ramp is unmistakably clear to the effect that the cause of action therein asserted was under the provisions of C.C. Article 2315.
From the above we note that there can be a serious dispute between an individual and an attorney relating solely to the issue of whether or not there is a contract creating a client-attorney relationship. Damages growing out of a breach of any obligation thereunder would be treated as any other case involving a breach of contract. However, when there is no dispute as to the client-attorney relationship and the issue is solely one of whether the conduct of the attorney thereunder constituted malpractice, i. e., failed to meet the standard of professional expertise as required under the circumstances, it is an action contemplated by C.C. Article 2315 and, therefore, R.S. 22:655 is applicable. The trial judge properly overruled an exception of no right of action filed by the defendant directed to this issue.

Damages
The following in Toomer v. Breaux, 146 So.2d 723 (3rd La.App., 1962, writs denied, 1963), clearly announces the law applicable to the burden of proof in a legal malpractice suit:
"[9] An attorney is liable to his client for the damages caused to the latter by the attorney's neligence in the handling of the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. King v. Fourchy, 47 La.Ann. 354, 16 So. 814; Dyer & Stevenson v. Drew, 14 La.Ann. 657; Spiller v. Davidson, 4 La.Ann. 171 (stating, for example, that it is necessary for the client `to show that he had a valid claim, which has been impaired or lost by the negligence or misconduct of the attorney,' 4 La.Ann. 172); Thompson v. Lobdell, 7 Rob. 369; Breedlove v. Turner, 9 Mart. (O.S.) 353 (pointing out that reasonable misjudgment, especially when the law is unclear, is not actionable negligence). See also: Annotation, `Attorney's liability for negligence in preparing or conducting litigation', 45 A.L.R.2d 5."
To prove the validity of plaintiffs' claims, testimony adduced at the first trial was introduced into evidence. As stated above, and based on that testimony, the judge a quo held that Mrs. Foster had the last clear chance to avoid the accident and rendered judgment in favor of the plaintiff. We are convinced that this determination *878 is manifestly erroneous and requires reversal. Inasmuch as we are satisfied that plaintiffs have failed to show that they had a valid claim, we do not have to discuss the issue of whether Mr. Kircus's conduct under the circumstances constituted negligence.
The facts involving the death of Mrs. Bertha Vessel are virtually undisputed. The accident occurred between seven and seven-thirty p. m. on the evening of April 21, 1969, when Mrs. Vessel was walking in an easterly direction in the westbound lane of Louisiana Highway 10, a short distance from its intersection with U. S. Highway 61.
Mrs. Vessel was approximately one hundred years of age. She was small in stature and on the night in question was wearing dark colored clothing and apparently a white apron. She was struck by a vehicle operated by Mrs. Foster while walking on a bridge which was unlighted and dark. Every witness who testified as to the physical facts of the accident placed her in the middle of the lane for westbound traffic. She resided with a daughter who also lived on Louisiana Highway 10 some distance east of the scene of the accident. It was Mrs. Vessel's customs and habit to walk some several miles each day to her home in St. Francisville and to return to her daughter's for the night. It was on such a journey that she met her death.
Mr. Purvis Schilling, Chief of Police for the Town of St. Francisville, testified that he was parked at a blinking light at the intersection of Louisiana Highway 10 and U. S. Highway 61 when the decedent walked by him. She appeared to be small, dressed in dark clothing, and he was concerned for her safety and asked if he could take her to her destination. She declined and proceeded on her way. Moments thereafter, a Mr. Armstrong was asked by Mr. Schilling to see if the decedent would ride with him. Mr. Armstrong crossed U. S. Highway 61, asked the decedent if he could give her transportation, and returned to Mr. Schilling when she declined the second offer. She was last seen by Mr. Schilling walking in an easterly direction in the center of the westbound lane. Moments later, he heard a "thump" and Mrs. Foster screamed. He immediately drove to the spot of the accident and observed that a vehicle driven by Mrs. Foster had struck the decedent. The latter lay motionless in the westbound lane a few feet from the north side of the bridge railing.
Mrs. Foster testified that she was returning from a friend's home in a subdivision located some four hundred feet east of the bridge. As she proceeded out of the subdivision she turned left on Louisiana Highway 10 and was traveling in a westerly direction at approximately 25 m. p. h. The bridge is at a much lower elevation than the entrance to the subdivision from whence Mrs. Foster was departing. Mrs. Foster stated that because of the difference in elevation which prevented her vehicle's lights from shining on the bridge, coupled with the lights of an oncoming car, she did not discern the presence of Mrs. Vessel until a fraction of a second before the impact. She immediately applied her brakes and cut to her left but was unable to avoid striking the decedent. Having realized that she had struck someone, she jumped out of the car, become hysterical and started screaming.
The State Trooper who testified corroborated the testimony of Mr. Schilling to the effect that Mrs. Foster's car traveled not over ten to twelve feet beyond the point of impact. There were no skid marks before the point of impact but there were "scuff marks" some ten feet beyond the point of impact to where Mrs. Foster's vehicle came to rest.
The evidence is uncontradicted that the nearest light to this bridge was at the entrance of the subdivision, some four hundred feet from the scene of the accident. There was a light at the bridge but it was inoperable at the time.
Several of the plaintiffs testified that their mother, despite her age, was in excellent *879 health, walked daily, and refused transportation from anyone she did not know. They further established that she was familiar with the highway, the bridge, and a raised curb traversing the bridge which was wide enough to permit pedestrian traffic.
To hold that Mrs. Foster had the last clear chance to avoid the accident, plaintiffs are required to show that despite the admitted negligence of their mother she was in a position of peril from which she was unable to extricate herself; that Mrs. Foster discovered or should have discovered the peril with the exercise of reasonable care; and, that Mrs. Foster, with the exercise of due care, could have avoided the accident. Kurth v. Liberty Mutual Ins. Co., 219 So.2d 203 (1st La.App., 1969).
The physical facts in this case clearly support the argument of the defendant that Mrs. Foster was not negligent nor did she have the last clear chance to avoid the accident.
We fully support their contention that the negligence proximately causing this accident was the action of the decedent in walking in the westbound lane of traffic, at night, across a bridge which was in total darkness. She could have easily stepped on the bridge curbing, thereby extricating herself from a position of peril. In our opinion, Mrs. Foster was in no position to discover the peril since her lights did not shine on the bridge until she was approximately twenty feet from the end of it and she was blinded by oncoming lights. Calais v. Thibodeaux (La.App.3rd Cir. 1969) 220 So.2d 209; Frank v. State Farm Mutual Automobile Insurance Company, (La.App.3d Cir. 1971) 254 So.2d 102; Carona v. Southern Farm Bureau Casualty Insurance Co., (La.App.1st Cir. 1964) 164 So.2d 138; and Craker v. Allstate Insurance Company (1971) 259 La. 578, 250 So.2d 746.
Accordingly, for the above reasons, the judgment of the District Court in favor of the plaintiffs and against the defendant is reversed and judgment is rendered herein in favor of the defendant dismissing plaintiffs' suit with prejudice and at their cost.
Reversed and rendered.
NOTES
[1] Under the authority of Succession of Roux v. Guidry, 182 So.2d 109 (4th La.App.1966, writs denied, 1966). See a critical analysis of this case in an article by Justice Tate, 43 T.L.R. 235. St. Paul contends that the facts in Roux are clearly distinguishable from those in the instant case in that Nolan Vessel was both a succession representative and as such entitled to seek damages incurred by the estate of the decedent and also a son of the decedent and therefore entitled to bring an action for the alleged wrongful death of his mother. Accordingly, St. Paul argues that had Mr. Kircus appealed, the trial judge's decision on the exception would have been reversed and plaintiffs would have been able to recover against Mrs. Foster's liability insurer.
[2] Judgment in favor of the defendant was affirmed on other grounds.