353 So.2d 366 (1977)
Doris M. BAHAM, Plaintiff and Appellee,
v.
Carolyn PATTERSON, Donald F. McGowan, Cotton's Inc., United States Fidelity & Guaranty Company and Government Employees Insurance Company, Defendant and Appellant.
No. 11612.
Court of Appeal of Louisiana, First Circuit.
November 23, 1977.
As Amended on Denial of Rehearing December 28, 1977.
Writ Refused February 10, 1978.
*367 Robert S. Cooper, Copper & Cooper, Baton Rouge, for plaintiff and appellee.
Anthony J. Clesi, Jr., Lane & Clesi, Baton Rouge, for defendant and appellant.
Before BLANCHE, COVINGTON and CHIASSON, JJ.
CHIASSON, Judge.
Defendants, Donald McGowan, Cotton's Inc., and United States Fidelity & Guaranty Company (U.S.F. & G.), appeal a judgment rendered against them and defendant Carolyn Patterson (in absentia), in solido, in the amount of $35,000.00 for the wrongful death of plaintiff's minor son, Lonnie Sherman Sullivan, who was fatally injured as a result of an automobile accident on U.S. Highway 190 in Livingston Parish. Also named as a defendant was the Government Employees Insurance Company (GEICO) against whom suit was dismissed. Plaintiff, Doris M. Baham, did not appeal the dismissal of GEICO but did answer the appeal herein seeking an increase of $2,295.86 to cover the funeral expenses, amounting to a total of $37,295.86 in damages. The judgment is therefore final as to GEICO and Carolyn Patterson, who did not file an appeal.
On the night of February 26, 1973, a Chevrolet pickup truck owned and operated *368 by defendant, Carolyn Patterson, was stalled in the eastbound lane. Accompanying Carolyn was a man and a young boy. At the same time, defendant, Donald F. McGowan, was driving a 1966 Ford tractor-trailer rig owned by his employer, Cotton's Inc., also in an easterly direction. Likewise, at the same time, plaintiff's minor son, Lonnie Sullivan, was operating a 1969 Oldsmobile in a westerly direction.
At some time shortly before midnight the tractor-trailer rig, driven by McGowan, came upon the Patterson vehicle in the eastbound lane from the rear. Unable to bring the tractor-trailer rig to a stop in time to prevent a rear-end collision with the Patterson vehicle, McGowan pulled into the westbound lane and upon seeing the oncoming Sullivan vehicle, proceeded to the westbound shoulder. While the McGowan vehicle was partly on the westbound shoulder and partly in the westbound lane, the right front of said vehicle came into contact with the right side of the Sullivan vehicle. Prior to impact the Sullivan vehicle had been traveling in the westbound lane and the driver thereof had applied his brakes and skidded for 154 feet on the asphalt portion of the highway and thereafter had traveled with two wheels on the westbound shoulder for approximately 131 feet prior to the collision with the McGowan vehicle. After the collision with the McGowan vehicle the Sullivan vehicle deflected to the left and struck the left front of the Patterson vehicle which was still in the eastbound lane, 20 feet from the point of first impact, and then proceeded across the westbound lane of travel and came to rest against a tree, about 180 feet from the general area of the collision.
At the time of the accident the weather was clear and the road surface was dry. At the place where this accident occurred, Highway 90 is an asphalt two-lane highway 24 feet wide running generally in an east-west direction and is straight and level for several miles. The shoulder on either side of the highway is graveled and about 10 feet wide.
The record reflects that the Patterson vehicle, which was overloaded and in extremely poor condition, had been stalled in the eastbound lane for more than two hours with inoperable tail lights, and that no effort had been made on the part of its occupants to flag, flare or warn traffic of the stalled vehicle or to remove it from the eastbound lane. The Patterson vehicle, however, had the word "Chevrolet" across the rear of the pickup truck in large reflectorized letters and a Louisiana license plate which was also reflectorized.
In its reasons for judgment the trial court stated:
"Although the court feels that Carolyn Patterson was grossly and primarily negligent, some negligence is found on the part of defendant, McGowan, and the court finds an absence of contributory negligence on the part of the deceased Lonnie Sullivan."
Defendants contend that the trial court erred in finding Donald F. McGowan negligent and, alternatively, that the trial court erred in failing to find Lonnie Sullivan guilty of contributory negligence. They assert that the record contains no evidence that Donald McGowan was speeding, no evidence that he was not keeping a proper lookout, and no evidence that he could have avoided the accident.
In Craker v. Allstate Insurance Company, 259 La. 578, 250 So.2d 746 (1971), the Supreme Court rejected the so-called "range of vision" or "assured clear distance" rule as the standard of care to be exacted of the nighttime driver as "unworkable and unrealistic with modern vehicles on modern highways." The Court instead opted for ". . . the broad requirement of reasonableness, a formula of negligence where there are few absolute rules and one requiring a careful consideration of all circumstances surrounding each case." The First Circuit has followed this new standard of care. Welch v. Mayhall, 325 So.2d 741 (La. App. 1st Cir. 1976); Chaisson v. J. Ray McDermott & Co., 324 So.2d 844 (La.App. 1st Cir. 1975).
*369 Additionally, since McGowan's vehicle collided with the Sullivan vehicle, which was in its proper lane, McGowan must exculpate himself from any fault, however slight, which contributed to the accident to be free from liability. Simon v. Ford Motor Company, 282 So.2d 126 (La.1973); Tillman v. Canal Insurance Co., 305 So.2d 602 (La. App. 1st Cir. 1974).
McGowan's position is that he was maintaining a proper lookout, was not speeding, and was prevented from timely seeing the stalled Patterson vehicle because his vision had been impaired by the headlights of an oncoming vehicle which preceded the Sullivan vehicle; that he entered into the westbound lane to avoid a rear-end collision with the stalled vehicle because the eastbound shoulder was occupied by two persons who had been pushing the stalled vehicle from the rear, but who had run to the shoulder of the road when they realized that he would not be able to stop his vehicle before reaching them.
The speed limits for trucks at the time of the accident was 50 miles per hour and for automobiles 60 miles per hour. The vehicle McGowan was operating was equipped with a device that records speeds and stops, if any, that the vehicle makes, which device is commonly referred to as a "tattletale." Although McGowan's testimony was that he was driving 50 miles per hour prior to the accident and had reduced his speed to 40 miles per hour moments before the accident, the "tattletale" graph was not produced. The graph had been specifically sought by the plaintiff but was not produced, and the only explanation given at the trial for the non-production of the graph was that the company no longer had it. The best evidence available as to the speed of the McGowan vehicle would have been the graph on this vehicle. A presumption of negligence is therefore raised because of defendants' failure to produce this graph. We, therefore, conclude that the trial judge was not in error in holding that McGowan was guilty of some negligence which contributed to the accident.
With respect to the defendants' contention that Lonnie Sullivan was guilty of contributory negligence, it must first be observed that such a plea is an affirmative defense with the burden being on the party pleading it to prove, by a preponderance of the evidence, that the acts or omissions complained of were a proximate cause of the accident. La.C.C.P. Art. 1005; McInnis v. Fireman's Fund Insurance Company, 322 So.2d 155 (La.1975); White v. State Farm Mutual Automobile Ins. Co., 222 La. 994, 64 So.2d 245 (1953).
Defendants contend that Lonnie Sullivan could have avoided the accident had he not been operating his vehicle at an excessive and negligent rate of speed. The defendants offered the testimony of two experts to estimate the speed at which Sullivan's vehicle was traveling prior to the first impact with the cab of the tractor-trailer rig. One of the experts estimated that the Sullivan vehicle was traveling at a minimum speed of 87 miles per hour prior to the first impact and that the Sullivan vehicle could have stopped in time to avoid the accident even had it been traveling 75 miles per hour. The other expert estimated that the Sullivan vehicle was traveling at a speed in excess of 80 miles per hour and that the Sullivan vehicle could have stopped in time to avoid the accident even had it been traveling at the rate of 70 miles per hour.
The trooper in charge of the accident investigation estimated the speed of the Sullivan vehicle at 60 to 70 miles per hour, while the trooper assisting him felt that the vehicle was traveling in the 70 miles per hour bracket, give or take 5 miles per hour.
The best calculations of defendants' experts as to the speed of the Sullivan vehicle were based on the assumption of continuous braking from the point where the skid marks began until the point of impact with the McGowan vehicle. The speed estimates of the officers were based in part on the total distance traveled and damages sustained.
The only eye witness who testified was McGowan and he could not estimate the speed of the Sullivan vehicle. He was of *370 the opinion that had the Sullivan vehicle continued in a path off of the westbound shoulder, it would have collided head-on with the cab of McGowan's truck. He further testified that the Sullivan vehicle appeared to be trying to re-enter the westbound lane and pass between his truck and the Patterson vehicle. The investigating officer testified that there was a displacement of gravel where the Sullivan vehicle left the road, indicating that Lonnie was still braking at that point; that from that point it diminished and became a turning movement with the wheel itself turned at a different angle displacing the gravel over to one side.
One of defendants' experts stated that as soon as the locked wheel got onto the gravel it quit laying the black skid marks and it made an arch, which arch continued around and re-entered the highway. Further, he would have to concede that acceleration was possible during the 131 feet when the Sullivan vehicle was partly on the highway and partly on the shoulder, even though he was of the opinion that it was not very probable, and that the only really definitive physical finding to work with was the 154 feet of skid marks.
This evidence furnished a reasonable basis for concluding that Lonnie did not brake for the entire distance before the impact and that in his attempts to maneuver on the shoulder or while trying to get between the two vehicles, he may have accelerated his vehicle. Lonnie, at first, apparently was maneuvering to reach the north shoulder and clear the westbound lane for the McGowan vehicle and then was confronted with the McGowan vehicle heading toward the same area. He probably could not estimate the speed of the oncoming truck just like McGowan could not estimate Lonnie's speed. However, the physical evidence does show that Lonnie did take evasive action and negates the application of brakes continuously to the point of impact. Expert tests based upon assumptions not proven or upon variable factors not established are of no value.
We, therefore, cannot say that the trial court erred in holding that defendants had failed to carry their burden of proving the contributory negligence of Lonnie Sullivan by a preponderance of the evidence.
As to plaintiff's contention that the amount of the award should be increased to cover the funeral expenses, there is nothing in the record to show that this item was not taken into consideration by the trial court. If it was merely an oversight by the trial judge as plaintiff contends, there exists adequate remedy at law to have corrected such error in the District Court.
The judgment of the trial court is affirmed.
AFFIRMED.
BLANCHE, Judge, dissenting.
There is no proof in the record of the truck's excessive speed. The majority presumes it because of defendant's failure to produce the "tattletale" graph. This presumption as to excessive speed is the "some negligence" which the trial judge concluded to be a contributory cause of the accident.
In my view, the "speed" of the truck was not a cause-in-fact of the accident. The truck driver was able to bring his truck to a stop twenty feet past the stalled vehicle, and braking distances become irrelevant when one is presented with the emergency of a stalled vehicle in the highway. For example, had the driver of the truck noticed the stalled vehicle twenty-one feet farther away, he would have been able to avoid the accident.
A motorist traveling at night is not charged with the duty of guarding against striking an unexpected or unusual obstruction which he had no reason to anticipate that he would encounter on the highway. The occupants of the distressed vehicle which had been blocking the highway for at least two hours had a duty to warn oncoming traffic of the presence of the stalled vehicle. Their failure in this regard was the cause-in-fact of the accident and not the truck driver's unknown speed.
Donald McGowan, the truck driver, described what happened as follows:

*371 "Q Now, would you tell me in your own words what happened when the accident occurred?
"A Well, I was driving along and I passeda vehicle was approaching me, and before the vehicle got actually to me, he threw his bright lights on me and as soon as I passed the vehicle I threw my bright lights up and that'sat that point is when I seen the pickup truck. There was a man and a boy pushing the truck, and a woman driving itsteering it, and I tried to stay in my lane as long as I could.
"When they saw me approaching and realized I couldn't stop, they ran to the right shoulder of the road and stood there. When I decided that I didn't have enough room to stop and didn't have enough time, I couldn't go off the right shoulder without striking the people, and I decided to go off the left shoulder of the road and try to get the truck off to the ditch." (Exhibit P-1, pp. 11-12)
It appears to this writer that the truck driver was presented with the dilemma of whether to hit the stalled truck, the truck occupants on the right side of the road or to cross the highway to the opposite side where, at the time, he perceived that there was no risk. In crossing over to the left, he, in turn, created an emergency to young Sullivan resulting in his tragic death.
This writer believes that in the light of the circumstances McGowan acted reasonably in attempting to avoid the accident.
In conclusion, the record is barren of any evidence of McGowan's speed, there is no evidence that he failed to keep a proper look out, and there is no evidence that he could have avoided the accident. Therefore, plaintiff's suit should have been dismissed.
For the above reasons, I respectfully dissent.