393 So.2d 851 (1981)
Jerry Wayne JENKINS, Plaintiff-Appellee,
v.
ST. PAUL FIRE & MARINE INSURANCE COMPANY et al., Defendants-Appellants.
No. 14411.
Court of Appeal of Louisiana, Second Circuit.
January 13, 1981.
Rehearing Denied February 19, 1981.
*853 Mayer, Smith & Roberts by Alex F. Smith and George T. Allen, Shreveport, for defendants-appellants, John B. Morneau and St. Paul Fire & Marine Ins. Co.
Charles E. Tooke, Jr., Shreveport, defendant-appellant, in pro. per.
Richie & Richie by John A. Richie and C. Vernon Richie, Edward O. Kernaghan, Shreveport, for plaintiff-appellee, Jerry Wayne Jenkins.
Before PRICE, HALL and FRED W. JONES, Jr., JJ.
En Banc. Rehearing Denied February 19, 1981.
HALL, Judge.
Plaintiff, Jerry Wayne Jenkins, was seriously injured when the pickup truck he was driving was struck by a train at a crossing in Plain Dealing, Louisiana. He employed Charles E. Tooke, Jr., an attorney, who with plaintiff's consent associated John B. Morneau, another attorney, to pursue a tort claim against the railroad company. Suit was filed by the attorneys two days after prescription had run, resulting in the suit being dismissed.
Plaintiff filed this malpractice action against the attorneys and Morneau's professional liability insurer (Tooke was uninsured), alleging their negligence in allowing the claim to prescribe and alleging that, but for their negligence, he would have recovered damages from the railroad. Both attorneys denied their negligence and denied that plaintiff could have recovered from the railroad. Tooke made a third party demand against Morneau, seeking recovery from him for any amount Tooke might be cast in judgment.
After trial before a jury on the issues of the attorneys' negligence and the liability of the railroad to plaintiff, the jury, in answer to interrogatories, found that Morneau and Tooke were both negligent, the railroad was guilty of negligence which was a cause of the accident, plaintiff was not guilty of negligence which was a cause of the accident, and Tooke was not entitled to judgment over against Morneau. A verdict was rendered in favor of the plaintiff for $87,000. From a judgment for that amount in favor of plaintiff against all defendants, the defendants appealed. Plaintiff answered the appeal.
On appeal, Morneau and his insurer assign as error (1) the jury's finding that plaintiff was not contributorily negligent; (2) the jury's finding that the railroad was guilty of negligence; and (3) the jury's finding that Morneau was guilty of negligence.
Tooke assigns as error the jury's findings that (1) the railroad was negligent; (2) Tooke's action, activities and services rendered were not commensurate with his responsibilities under the circumstances; and (3) Tooke was not entitled to look to Morneau with respect to the suit being timely filed.
Plaintiff assigns as error (1) the trial judge's refusal to allow evidence concerning additional attorneys fees incurred by plaintiff which would not have been incurred by him had defendants not been negligent in failing to timely file suit; and (2) the trial court's failure to award plaintiff a larger amount of damages.
We reverse, holding that the finding of the jury that plaintiff was not guilty of negligence which was a cause of the accident was manifestly erroneous. The preponderance of the evidence is to the effect that plaintiff could have and should have seen and heard the approaching train and was negligent in crossing the railroad track in the path of the oncoming train. Plaintiff's contributory negligence would have barred his recovery against the railroad *854 and, consequently, plaintiff has not established any loss in respect to recovery of damages against the railroad by reason of the attorneys' negligence.
We further hold, however, that plaintiff is entitled to recover the additional cost incurred by him to obtain the legal services which defendants agreed to perform but failed to perform.
Attorney MalpracticeApplicable Law
An attorney is liable to his client for the damages caused to the client by the attorney's negligence in the handling of the client's business, provided that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. It is necessary for the client to show that he had a valid claim which has been impaired or lost by the negligence or misconduct of the attorney. When a client sues his attorney for damages because of the mishandling of litigation, the client must, in order to recover, prove that, except for the negligence of the attorney, the litigation would have resulted in a decision favorable to the client. Tassin v. Labranche, 365 So.2d 31 (La.App. 4th Cir. 1978); Vessel v. St. Paul Fire & Marine Insurance Co., 276 So.2d 874 (La.App. 1st Cir. 1973); Toomer v. Breaux, 146 So.2d 723 (La.App. 3d Cir. 1962).
In this case, plaintiff was required to prove that the attorneys were negligent in allowing his claim against the railroad to prescribe and that, except for that negligence, he would have recovered against the railroad. He was required to establish a valid claim against the railroad, that the railroad was liable to him, and the amount of damages he was entitled to recover from the railroad.
Negligence of the Attorneys
Shortly after the accident which occurred December 8, 1972, Tooke visited with plaintiff or his wife at the hospital at the request of a mutual friend. An attorneyclient relationship was established and Tooke assisted the wife in handling some insurance forms and the like. When plaintiff was well enough to talk about the accident claim, Tooke discussed the matter with him and it was agreed that he would handle the claim with the assistance of Morneau, who also met with plaintiff. Tooke's law practice was primarily in the field of real estate and he did not normally handle litigation due to a serious hearing difficulty. Tooke chose Morneau, a young lawyer with prior experience as an insurance adjuster, to be associated with him on the case.
During the summer and fall Morneau investigated the case, making trips to the accident scene, interviewing witnesses, and talking to plaintiff on several occasions. In about October he made a report to Tooke on the investigation and Tooke asked him to prepare a draft of a petition to be filed. Morneau prepared a draft and delivered it to Tooke in November for Tooke's review. Tooke's and Morneau's recollection of the facts which transpired thereafter are conflicting. The last day for filing the suit was Monday, December 10, 1973, since December 8, the anniversary date of the accident, fell on a Saturday. Tooke testified that the petition, which was retyped in his office, was delivered to Morneau for filing on Friday, December 7. His secretary at the time testified it was delivered on an earlier Friday. Morneau testified that as the prescription date approached he called Tooke's office on numerous occasions but could not reach Tooke. He testified Tooke's secretary told him the last day to file suit was Wednesday, December 12, which Morneau accepted because he had left his entire file with Tooke and did not have the accident date before him. Morneau testified he picked up the petition at Tooke's office on Tuesday, December 11, got plaintiff to sign the pauper's affidavit, and took it to the clerk's office late that afternoon. There was no judge available at that time to sign the forma pauperis order, so the clerk held the petition until the next day, got the order signed, and filed it on Wednesday, December 12.
Within a week or two, Tooke and Morneau were contacted by the railroad's attorney who called their attention to the fact that the suit was filed late and the claim had prescribed. The suit was subsequently *855 dismissed. It was not until June that Tooke and Morneau told plaintiff what had happened, at which time Tooke advised plaintiff to get another lawyer and assured him of his cooperation.
The negligence of both lawyers in failing to file suit timely and in allowing the claim to prescribe is clear. Each had established an attorney-client relationship with the plaintiff, who was relying on each to properly pursue his claim and protect his interests. Each was equally responsible to the plaintiff and each was equally irresponsible in failing to see that the suit was timely filed. As between themselves, neither attorney established that it was the responsibility of the other to see that the petition was filed or that either was justified in relying on the other in this regard. The jury correctly found that both Tooke and Morneau were negligent and that Tooke was not entitled to recover over against Morneau.
Liability of the Railroad
Facts
The accident happened at the Palmetto Street crossing in Plain Dealing, a town in rural northwest Louisiana with a population of about 2,000. Palmetto Street runs east and west and is the main business street of the town, with the business district being located east of the crossing. The St. Louis Southwestern main line track runs north and south. In addition to the main line track there is a passing track east of the main track and a storage track even farther east, making a total of three tracks a motorist must cross. Plaintiff was traveling west at the time of the accident. The train was traveling south. The crossing is marked by electric signals, with flashing red lights and ringing bells. There are some buildings and other structures east of the tracks, extending north of Palmetto Street. Sometimes boxcars are stopped on the storage track.
The crossing is the southernmost of two crossings in Plain Dealing, the northernmost crossing being Highway 2 and being located about 340 feet north of the Palmetto Street crossing. The main line track curves very slightly to the east as it runs to the north.
The signal light on the east side of the crossing is located 15½ feet from the storage track. There is a distance of 45 feet between the storage track and the passing track. The main track is 10½ feet west of the passing track. The evidence does not disclose the width of the storage and passing tracks, but assuming a width of 6 feet for each there is a distance of 83 feet from the signal light to the main track and a distance of 61.5 feet from the west line of the storage track to the main track.
The diagram, photographs, and testimony in the record establish that at the signal light the vision of a westbound motorist to the north is at least partially obscured by buildings and other structures and by any boxcars parked on the storage track. The same evidence, however, establishes that once a motorist has crossed over the storage track, at a point approximately 55 to 60 feet east of the main track, the motorist's vision to the north is unobstructed to a point beyond the Highway 2 crossing, the south line of which is 340 feet north of the Palmetto Street crossing.
Plaintiff, who lived in the country near Plain Dealing, arrived in town at approximately 9:00 a. m. He was traveling east on Palmetto Street when he reached the railroad crossing which was the scene of the accident. The signal lights were flashing and bells were ringing. Plaintiff looked to the north and south, up and down the tracks, saw that no train was approaching, and proceeded across the tracks without trouble. He stopped at a store on Palmetto Street approximately a block from the crossing.
Plaintiff was in the store for 15 to 20 minutes, then returned to his truck and headed west on Palmetto toward the crossing. The signal lights were still operating. Plaintiff testified that he stopped or slowed down when he reached the warning signal, but proceeded on across the tracks. He may have glanced down the tracks when he crossed the storage track. There was a *856 boxcar parked on the storage track to the north of the crossing. Plaintiff was traveling at 5 to 6 miles per hour, the windows on his truck were rolled up, the heater fan was running, and the windshield wipers were operating. The weather was overcast and it was raining. As plaintiff's truck crossed the main track it was struck by the train. Plaintiff never saw the train before it hit him.
The train's engineer testified that the train was traveling between 40 and 45 miles per hour. The railroad-imposed speed limit was 49 miles per hour; there was no statute or town ordinance governing the speed of trains in the vicinity of the accident. The engineer testified that the oscillating engine headlight was on, that the engine bells were ringing and that he began to blow the customary warning whistle at the whistle board before he crossed the northernmost crossing.
The train's brakeman, seated in the fireman's seat on the left side of the engine, testified the train was going 49 miles per hour and that the engineer started blowing the whistle a short distance before reaching the Highway 2 crossing. He saw plaintiff's truck moving slowly across the Palmetto Street crossing and thought it would stop. When he realized it was not going to stop, he shouted to the engineer who threw the brakes into emergency. The engineer, seated on the right side of the engine, did not see the truck until impact.
Two witnesses testified they saw plaintiff approaching and crossing the tracks at a slow rate of speed, but without stopping. Several witnesses testified they heard the train start sounding its whistle as it approached the northernmost or Highway 2 crossing.
Several witnesses testified it was not unusual for the signal lights to malfunction by operating continuously even though there was no train approaching, and verified that such was the situation on the morning of the accident.
Negligence of the Railroad
We find no fault with the jury's finding of negligence on the part of the railroad which was a contributing cause of the accident. The railroad had a duty to maintain properly operating electric signals on this crossing located on the main street of a small municipality. The malfunctioning of the signals had occurred on previous occasions, to the knowledge of the railroad. The continuous operation of the signals when no train was approaching rendered them ineffective as a warning of an approaching train, particularly to a motorist such as plaintiff who had crossed the track minutes before and was aware that the signal was operating continuously. The effect of the malfunction was to render the Palmetto Street crossing the equivalent of an unsignaled crossing. The accident probably would not have happened if the signal had been working properly and serving its intended purpose as a warning device to alert vehicular traffic of the approach of a train.
Although the speed of the train, which was not regulated by statute or ordinance, may not have been excessive at a properly signaled crossing, it could be viewed as excessive under the conditions prevailing here. The causal connection between the speed of the train and the accident is not that the train if operated at a slower speed could have been stopped in time to avoid the accident (it could not), but is that the motorist would have had more time to observe the train and stop his vehicle.
There is also sufficient evidence to support a finding that the train's whistle was not sounded until shortly before its approach to the northernmost Highway 2 crossing, less than the 900 feet required by LSA-R.S. 45:561. See Watson v. Illinois Cent. Gulf R. R., 355 So.2d 1366 (La.App. 1st Cir. 1978), writ refused 357 So.2d 1168 (La.1978); Bertrand v. Missouri Pacific Railroad Company, 160 So.2d 19 (La.App. 3d Cir. 1964), writ refused 245 La. 1075, 162 So.2d 571 (1964).
The combined factors of the nature of the crossing (located on the main street of a municipality), the malfunctioning signal lights, the speed of the train, and the failure *857 to sound the whistle at the distance required by statute constituted negligence on the part of the railroad which was a legal cause of the accident.
Plaintiff's Contributory Negligence
A motorist approaching a railroad crossing must use his senses of sight and hearing for possible oncoming trains before traversing the railroad crossing. The motorist has the responsibility of seeing and hearing that which he could have seen and heard, and he is presumed in law to have seen and heard what he could have seen and heard. If the motorist's view of the right of way is obstructed, he must exercise a higher degree of caution. Hebert v. Missouri P. R. Co., 366 So.2d 608 (La.App. 3d Cir. 1978), writ refused 369 So.2d 153 and 155 (La.1979) and cases cited therein. The motorist is held to the reasonable man standardhe must see and hear that which a reasonable man under like circumstances would have seen and heard.
In the instant case, plaintiff was familiar with the crossing, having passed over it a few minutes prior to the accident and on previous occasions. From his experience a few minutes earlier, he could reasonably believe that the flashing electric signals were not indicating the approach of a train; but he could not reasonably believe they were indicating the track was clear. His duty was to look and listen for an approaching train, to keep his vehicle under such speed and control that he could stop immediately if necessary.
Plaintiff may not have been able to see or hear the train as he approached the flashing electric signal and then the storage track. There was some obstruction of vision to the north. The train would have been north of the Highway 2 crossing at that point and might not yet have sounded its whistle.
Plaintiff's duty to look and listen did not cease but continued as he passed the signals and the storage track. When he crossed the storage track his vision to the north was unobstructed for more than 400 feet, past the Highway 2 crossing. Given the relative speeds of the train (49 miles per hour) and the truck (5 miles per hour), each was about 6 seconds away from the point of impact, with the train 400+ feet north and the truck 50+ feet east. At this point, plaintiff's view was unobstructed and, according to several witnesses, the train was sounding its whistle and its headlight was burning. Regardless of weather conditions, plaintiff could have and should have seen and heard the approaching train. At 5 miles per hour, he could have stopped his vehicle almost instantly, at least within 10 feet. His failure to see and hear what he could and should have seen and heard with the exercise of ordinary and reasonable care and his driving his truck across the main line track in the path of the oncoming train was negligence, and was a contributing legal cause of the accident.
In Hebert, supra, the driver of a pickup truck which was struck by a train at a crossing was held to be contributorily negligent where he had a view of 300 feet down the track from a distance of 45 feet from the track, and an unlimited view down the track when he was 20 to 25 feet from the track. The motorist in Glisson v. Missouri Pacific Railroad Co., 246 La. 470, 165 So.2d 289 (1964), from a point 48 feet from the track had a clear view for 380 feet and a partially obstructed view for at least 600 feet down the track, and was held to be contributorily negligent in failing to see an approaching train. In Bertrand, supra, the contributorily negligent driver's view was blocked by a grain truck parked near the track, but when the driver got within 50 feet of the track he had a clear view of the track for an almost unlimited distance. The driver in Theriot v. Texas & New Orleans Railroad Company, 220 So.2d 563 (La. App. 4th Cir. 1969), writ denied 254 La. 142, 222 So.2d 886 (1969), from a distance of 80 feet from the tracks had an unobstructed view of the tracks for 500 feet, and at 15 feet had an unobstructed view as far as the eye could see. The court held there was no reason the driver could not have seen the train if he had looked, or heard the train if he had listened. In Madere v. Southern Pacific Transportation Co., 383 So.2d 456 (La.App. 4th Cir. 1980), a motorist was held *858 contributorily negligent where, in spite of trees and shrubs, at a distance of 25 to 50 feet from the track he could have seen the train approaching.
Plaintiff contends that he was relieved of taking the usual precautions here because of the "dangerous trap" doctrine enunciated in McFarland v. Illinois Central Railroad Company, 122 So.2d 845 (La.App. 1st Cir. 1960) and other cases. Where a crossing is unusually dangerous because the view of a motorist is so obstructed as to require that he place himself in a position of peril dangerously near the tracks before he has a view of an oncoming train, the railroad company will be held liable unless it takes unusual precautions. The theory of the doctrine is that the railroad may not rely upon the duty of the motorist to stop, look and listen if the physical circumstances are such that taking such precautions will do the motorist no good.
The doctrine is not applicable here. Although plaintiff's view may have been partially obstructed at the signal light prior to crossing the storage track, his view was unobstructed for a substantial distance to the north after crossing the storage track, at which point he was not in a position of peril, but, on the other hand, had ample time, distance, and opportunity to look, listen and stop.
Plaintiff's contributory negligence would have barred his recovery against the railroad. Consequently, plaintiff has not established that the negligence of his attorneys caused him any loss. The jury's finding in this respect was manifestly erroneous and must be reversed.
Plaintiff's Answer to the Appeal
Recovery of Additional Attorneys Fees Incurred
During the course of the trial of this matter, plaintiff sought to present evidence before the jury of additional attorneys fees which he incurred in this malpractice action and which he would not have incurred in his action against the railroad. More specifically, plaintiff sought to introduce into evidence the fee contract between himself and his present attorneys in which he agreed to pay his attorneys the sum of $5,000 regardless of recovery in this matter, in addition to the normal contingent fees for cases of this nature.
The trial judge refused to allow this evidence to be presented to the jury. Accordingly, at the close of evidence, and outside the presence of the jury, a proffer, or offer of proof, was made of this evidence. The proffer includes the attorneys' fee contract and a statement by one of the attorneys setting forth the reasons for the additional fee requirement.
Normally, a personal injury claim such as plaintiff had against the railroad is handled strictly on a contingent fee basis. As a matter of fact, Tooke and Morneau had agreed to handle the lawsuit against the railroad on a contingent fee basis of onethird (1/3) of the amount recovered.
Because of complications inherent in the pursuit of plaintiff's rather stale claim against the railroad through a malpractice action against his former attorneys, counsel retained by plaintiff to handle his case was understandably unwilling to represent him solely on a contingent fee basis. Therefore, they reasonably required, in addition to a contingent fee, that plaintiff pay them $5,000 regardless of the outcome of the litigation.
Tooke and Morneau had agreed to pursue plaintiff's claim on a contingent fee basis. Under this arrangement, plaintiff would have had his day in court against the railroad on his serious good-faith claim, and would have owed no attorney fee even though unsuccessful. Because of his former attorneys' negligence in letting the claim prescribe, plaintiff had to retain other counsel and to obligate himself for a $5,000 fee regardless of the outcome. Therefore, plaintiff was required to obligate himself to pay $5,000 to obtain the same legal services which defendants had agreed to furnish simply on a contingent fee basis. The former attorneys' negligence and failure to furnish the legal services they contracted to *859 perform has caused plaintiff a loss of $5,000 which he would not have sustained except for his former attorneys' fault and failure to perform.
In Ramp v. St. Paul Fire and Marine Insurance Company, 263 La. 774, 269 So.2d 239 (1972), the Louisiana Supreme Court held in an attorney malpractice case that the plaintiff was entitled to recover from the negligent attorneys the additional attorneys fees that he would not have incurred but for the negligence of the defendant attorneys. The holding of the Ramp case is applicable here. Plaintiff is entitled to recover the loss he has sustained by reason of having to pay attorney fees to indirectly pursue his claim against the railroad, which the defendants had obligated themselves to do without charge except on a contingent basis. The award of this item of loss or damage does not amount to an award of attorney fees incurred in order to pursue the malpractice action as such, but is to compensate for the additional cost, i. e., attorneys fees, incurred by plaintiff in order to have the railroad's liability to him judicially determined. This is consistent with Ramp, where the attorney fee awarded was not for pursuit of the malpractice suit, but was for the additional fee incurred by the plaintiff to pursue certain inheritance rights which the negligent attorneys had failed to protect.
Plaintiff is entitled to recover this item of loss or damage.
Inadequate Damages
Since we conclude that plaintiff failed to establish that he had a valid claim against the railroad, and, consequently, is not entitled to recovery of damages for his personal injuries sustained in the accident, it is unnecessary to consider plaintiff's contention that the amount of damages should be increased.
Decree
For the reasons assigned, the judgment of the district court is reversed and set aside. Judgment is rendered in favor of the plaintiff, Jerry Wayne Jenkins, against the defendants, John B. Morneau and his insurer, the St. Paul Fire & Marine Insurance Company, and Charles E. Tooke, Jr., in solido, for the sum of $5,000, together with legal interest thereon from October 9, 1974 until paid, and for all costs of these proceedings, including the cost of appeal.
Reversed and rendered.