Plaintiff instituted this suit for damages based upon the breach of a contract. It alleged that it was in the building and supply business and that in July, 1940, defendants, being desirous of building a residence and garage near LeCompte, Louisiana, did enter a contract with it for the furnishing of material and the construction of same. That defendants were unable to finance the project and it was necessary to place a mortgage on the property to secure the contract price and to obtain a purchaser of the mortgage note or notes, which defendants were unable to do; and that for the benefit of defendants it sought and found a purchaser of the notes. That it spent much time in making the arrangements for defendants to finance the building project.
Plaintiff further alleged that the contract price agreed upon was $2600 and that it discussed the plans and specifications for the building with the defendants and the specifications were reduced to writing. That it was thoroughly understood by defendants and that after the specifications were furnished defendants and discussed with them, they confirmed the contract by letter. That the contract called for the demolishing of an old building on the premises and the building of a garage with the material salvaged therefrom.
Plaintiff alleged that it proceeded under the contract to wreck the old building, which was a five-room house with hall, porches, brick chimney and flue, and that it cleared off the premises for the erection of the dwelling house and garage. It alleged it drew the nails from the old lumber, separated the materials cleaned the mortar off the old brick, hauled material from its plant to begin the construction and did partially construct the garage and had begun the construction of the residence, at which time defendants began to interfere with the contract and its execution. Plaintiff alleged that defendants wanted to change the specifications, especially as to the grade of lumber; that they wanted a fence put around the house and other changes and additions, all of which the contract did not provide.
In an effort to please defendants, plaintiff agreed to the changes and additions and the work proceeded under said changed *Page 243 
specifications until the defendants presented to plaintiff the previously agreed to specifications with material changes therein; and that defendants changed the specifications by adding a clause that defendants would not be obligated to pay anything on the contract if there was the slightest deviation, even to the extent that if one board could be found in the structure that was not up to grade. That defendants' attitude was so unreasonable that it was impossible for it to continue with the work; and that defendants notified it that unless it agreed to the modified specifications, they would abandon the contract and that it therefore became impossible for plaintiff to continue under the contract.
Plaintiff also alleged it had incurred the following expense in attempting to fulfill its contract:
Labor ................................................... $120.00 Hauling ................................................. 31.00 Supervision ............................................. 25.00 Insurance ............................................... 15.00 Return of Material previously placed on premises ............................................ 15.00
Plaintiff further alleged it would have made a profit of $300 on the construction of the house and garage if it had been allowed to complete its contract and prayed for judgment against defendants in the sum of $500.
Defendants in answer denied owing plaintiff anything. They admitted they entered into a contract with plaintiff to demolish an old house and construct a garage with the material therefrom at an agreed price of $40 and that they undertook to agree but never actually agreed on the construction of a new dwelling house. That they discussed plans and specifications and that plaintiff submitted specifications which were not in accord with the specifications verbally agreed upon between plaintiff and them; that they changed the specifications to comply with the verbal agreement and that plaintiff never agreed to the changes, and therefore no actual contract was ever entered into. That it was understood between the parties that the specifications would be agreed upon and signed by both parties before the work began and that this was never done.
Defendants admitted that the old building was demolished but denied that the nails were removed from the old lumber. They denied that plaintiff cleared off the site for the garage, removed the mortar from the old brick or separated the materials, but admitted that it did haul certain material to be used in the construction of a new house, which material was rejected by defendants because of inferior grade. They admitted they objected to the grade of lumber plaintiff undertook to supply, which was not up to the grade verbally agreed upon.
Defendants further admitted plaintiff agreed to some changes in the specifications submitted by it but never agreed to the changes with reference to materials to be used in the roofing, the porch ceiling, inside ceiling and floor, the water tank, the floor of the garage, glass doors and in many other respects. They alleged that when they discovered that plaintiff was undertaking to furnish materials different from that agreed upon, they wrote into the specifications, "Any deviation from any statements as to materials, etc., by Contractor makes contract null and void"; and such a clause was necessary in order to protect them from the low grade of material plaintiff was attempting to put into the building.
Defendants further alleged that the sole and only reason plaintiff stopped work was because it was unwilling to comply with its verbal contract and to furnish materials of the kind and quality designated by the defendants. They alleged that they assisted plaintiff in every possible way in the prosecution of the work; that they loaned its workmen tools and loaned it the use of their labor and assisted in many other ways; and that when they discovered plaintiff was not going to perform its contract according to the verbal agreement, they submitted to plaintiff a proposition to stop and that they would make adjustment of all their difficulties at that time, which offer was refused. Defendants prayed that plaintiff's demands be rejected at its cost.
The lower court awarded judgment for plaintiff in the sum of $106, consisting of the following:
For insurance ............................................ $15.00 For hauling .............................................. 31.00 For labor ................................................ 60.00
and both plaintiff and defendants have perfected a devolutive appeal to this court.
A correct determination of the issues involved is not without difficulties because of the unbusiness-like methods employed by both plaintiff and the defendants in their *Page 244 
dealings with each other and this was no doubt due to the confidence each had in the other doing the right thing. The record makes one thing clear and that is that plaintiff and defendants had discussed the plans and specifications fully and had agreed on them before the specifications were put in writing. Sometime previous defendants had a bid from another concern on the same work, which was several hundred dollars less than the price asked by plaintiff. When asked by defendants why the price was higher, they were told, "You have asked for the best and that is what we are going to give you and you have to pay for it."
Both defendants testified to the above conversation and it is not denied by plaintiff. We therefore can safely assume it to be true and, with this in mind and as a premise to start from, the case can be more easily solved than it would be otherwise.
We are convinced from all the testimony that there was a verbal contract entered into and that the work was started on that contract and that when defendants signed the letter at plaintiff's request, which letter is in the record and is copied below, defendants referred to the verbal contract,
"Deax-Duck Lumber Co., Bunkie, La.
Gentlemen:
Mrs. Allen and myself (Mr. Luther Allen) agree to pay you $2500.00 on completion of the house per our agreement.
We also agree to execute, endorse and sign a note to Mr. Brewer in the amount of $3100.00 (This includes interest) and this is to be a mortgage note.
We also agree to pay you an additional $50.00 and this amount is to be placed on your books and paid at a later date.
Very truly yours,
(signed) L. Allen (signed) Mrs. Luther Allen."
There was no other written agreement ever executed by the parties. The specifications were prepared by plaintiff and a copy given them to check. This was nothing more than a memorandum and was supposed to cover as nearly as possible the verbal agreement. When and under what conditions the letter was signed is a matter of dispute. Plaintiff contends they delivered a copy of the specifications to defendants the night before and returned the next morning and had defendants sign the letter. Defendants deny this most emphatically and testify that on the morning of July 15, 1940, one of the members of the plaintiff partnership came to their house and asked them to sign the letter; that they refused to do so until they had a copy of the specifications; and that plaintiff went back to the car and brought them a copy. That they saw the specifications did not call for any grade of sills and plaintiff, when its attention was called to it, agreed to furnish heart yellow pine sills and told them that its men were waiting on the job and if they would sign the letter they could read the specifications over later. That both partners would be on the job and would wait there until they came over to see if there was anything else wrong with the specifications; that it could start its men on the foundation work in the meantime.
Under these conditions defendants signed the letter. A few hours later they proceeded to the site of the work and presented the copy of the specifications with the changes which made it conform to the verbal agreement. That the two members of the plaintiff partnership, after talking privately awhile, came back to them and called their laborers off the job. They were at the time working on the garage and had not started on the dwelling house. Defendants offered at that time to make any satisfactory adjustments of the work which had been performed on the garage and in demolishing the old house, to which offer plaintiff's members replied that they would have to see their lawyer first.
That both parties were relying on the verbal agreement as to specifications is clearly demonstrated by the fact that plaintiff started work demolishing the old house and building the garage on July 10th, five days before the specifications were prepared in writing and submitted to defendants. The specifications put into writing are far from complete, for instance, it provides, "Sills — 6X6, rough pine". There is no other description. It is evident that the kind of sills had been agreed upon and when defendants contended for heart yellow pine sills, plaintiff agreed to it. "Rafters — to rooms to be 2X6". There is no grade specified. "Joists to be 2X4 in every room". No grade given. "Steps to be made of 2X12 risers and 2X6 steps". No grade of the lumber is mentioned.
However, it is noticeable that wherever a low grade of lumber had been agreed upon and over which no objection was *Page 245 
made by defendants, it is particularly specified, for instance, "All inside ceilings to be of 1X6 and 1X4 #3 Centermatch".
The specifications for the water tank are as follows: "House to have gutter and 1500 gal. water tank." It fails to specify what kind of water tank. Plaintiff proposed to put in a galvanized iron or other cheap metal tank and defendants contended their agreement called for a heart cypress water tank.
The specifications call for the furnishing of material and construction of a fence around the house and garage. The height of the fence is not designated.
If plaintiff could have held defendants to the specifications they prepared and now contend they are bound by, then they could have installed a water tank which would have lasted but a short time. They could have built a house out of lumber which would scarcely have lasted as long as the first coat of paint and, if we are to correctly judge their intentions by the kind of sills they hauled to the site, that is what they intended to do, and instead of their profits being $300, as they alleged, they would have been much greater. The sills they placed on the site were cut from loblolly pine trees, so small that they could not be squared, and in many places the bark was still on them.
Although plaintiff agreed to meet many of defendants' objections and to give them the kind of material they asked for, it balked on the wooden tank, and the clause which caused plaintiff to abandon the contract was written at the bottom of the specifications and is as follows: "Any deviation from any statements as to materials, etc., by Contractor, makes contract null and void."
Defendants testified they added this clause because they had discovered plaintiff was attempting to put shoddy material in the structure and from the description of the sills placed on the site, we are convinced they were justified in adding it.
Plaintiff contends that under this clause, if one board in the house was found to be below grade, it would not have received any pay for the house. We can see no reason for any board to be below grade. Certainly when a definite grade of lumber is specified, it does not mean that only some of the lumber shall be of that grade. It means all of it shall be. It has often been said that a chain is as strong as its weakest link and while that is not literally true when applied to a house, yet a defective piece of material in a house can cause much grief and expense when it gives way.
We fail to see why plaintiff would complain of the above-quoted clause in the contract if it had intended to furnish the grade and kind of material it had contracted to furnish. The job was not so large as to require much effort on plaintiff's part to see that the lumber and other material sent to the job from its place of business were of the kind and grade specified.
It is evident that when the verbal agreement was reached between plaintiff and defendants, each had great confidence in the other and before the termination of their dealings, each had lost all confidence in the other. Defendants were afraid to trust any longer to plaintiff's honesty and fair play and plaintiff was afraid to trust defendants to do the right thing, and it is clear that both were relieved when the contract was abandoned. However, it is certain, to our minds, that defendants never agreed to the specifications as put in writing by plaintiff and were not bound by them. They were too indefinite to be a subject for agreement.
Since the contract was abandoned by mutual consent and defendants received some benefits out of the work performed by plaintiff, they should pay for them. Defendants do not contend they were damaged in any way by the transaction.
Plaintiff tore the old house down and partially erected the garage. Defendants contend they could have had the house demolished and the garage built for $40. This seems very cheap to us.
We are convinced that the benefits received by defendants from the work performed by plaintiff are well worth $40. They received no benefit from the hauling of the defective material to their place or from the insurance claim of plaintiff or the supervision claim, which is claimed for securing a purchaser for defendants' note to be executed when the house was completed. Plaintiff was to receive the money in payment for its material and labor and it was as much for plaintiff's interest as for the defendants' that it secure someone to finance defendants. We are convinced that a proper judgment in the case is one for plaintiff for $40.
It therefore follows that the judgment of the lower court is amended by reducing *Page 246 
the judgment for plaintiff against defendants from $106 to $40 and, as amended, the judgment of the lower court is affirmed, with costs of appeal assessed against plaintiff, Deax-Duck Lumber Supply Company.
TALIAFERRO and HAMITER, JJ., concur.