146 So.2d 723 (1962)
John Sheldon TOOMER, Plaintiff-Appellee,
v.
Alphonse L. BREAUX, Defendant-Appellant.
No. 674.
Court of Appeal of Louisiana, Third Circuit.
November 5, 1962.
Rehearing Denied November 28, 1962.
Certiorari Denied January 14, 1963.
*724 Charles Jaubert, Lake Charles, for defendant-appellant.
John Sheldon Toomer, Lake Charles, for plaintiff-appellee.
Before TATE, FRUGÉ and CULPEPPER, JJ.
TATE, Judge.
This is a suit by an attorney against his former client to recover a legal fee owed for certain services and also for damages. The defendant client denies liability and reconvenes for certain damages.
The defendant client appeals from judgment awarding a legal fee to the plaintiff attorney. The latter answers the appeal, praying that the award be increased.
This dispute arises from the plaintiff's representation of the defendant and others in a suit to recover for the death of certain cattle allegedly poisoned by a drilling compound used in the drilling of an oil well. Recovery was denied by the trial court; the judgment of dismissal was affirmed *725 by this appellate court; and the Supreme Court denied writs of certiorari and review. See Breaux v. Magnolia Petroleum Company, La.App. 3 Cir., 131 So.2d 615, certiorari denied.
After this appellate court rendered adverse judgment, the client Breaux made a written complaint to the local bar association, which complaint was referred to that organization's grievance committee. In this letter Breaux stated that the case had been lost because of the failure of the present plaintiff attorney to introduce into evidence certain laboratory reports, although requested to do so by Breaux.
Shortly thereafter, the plaintiff attorney filed the present suit, to recover his legal fee of $300 due for representing Breaux in the Magnolia case, above-cited, and further praying for twenty-five thousand dollars damages allegedly caused by the libelous statements contained in Breaux's letter of complaint to the local bar association. Breaux answered the suit, defending on the ground that the statements in the letter were privileged, but also reconvening on the ground that he was entitled to damages because the suit of Breaux v. Magnolia, above-cited, was lost through the negligent failure of the plaintiff, despite repeated requests to do so, to present certain laboratory reports in evidence.
All issues presented by these original pleadings and decided by the trial court are brought before us through the defendant's appeal and the plaintiff's answer to the appeal. We think that the trial court correctly decided these issues, for the most part, for the following reasons:

1. Privileged nature of the communication to the bar association.

Accepting for purposes of this discussion the plaintiff's contention that defamatory and untrue remarks concerning him were contained in the letter of complaint to the bar association, we agree with the trial court that the defendant made them without malice and that the defendant is not liable in damages for any defamatory remarks contained in the letter of complaint to the bar association, since such remarks were privileged.
On the grounds of public policy, in order to encourage the free communication of views in certain instances, the law recognizes certain communications as privileged and, as such, not within the rules imposing liability for defamation.
In some limited instances, such as in legislative debates, the privilege may be absolute and thus applicable even if the defamatory statement is maliciously made.
In other more numerous instances, a publication enjoys a "qualified" or conditional privilege, applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate.
See: 33 Am.Jur. "Libel and Slander", Sections 124, 125, and 126.
Thus, for example, defamatory statements made by a witness to an investigating committee of a trade organization, if relevant and if made in good faith and without malice, enjoy a qualified privilege, even though the statements turn out to be untrue. Walsh v. Bertel, 187 La. 877, 175 So. 605. "Information given in good faith, in the performance of a legal, moral or social duty, on a subject in which the party giving the information has an interest, if given to party having a corresponding duty or interest, is qualifiedly privileged." 175 So. 609.
*726 In every jurisdiction in which the question has arisen, it has been held that either an absolute or (at least) a qualified privilege attaches to a former client's complaint to a bar association grievance committee of his lawyer's alleged negligence in the performance of the legal work retained to do. Ramstead v. Morgan, 219 Or. 383, 347 P.2d 594, 77 A.L.R.2d 481 (1959); Annotation, "Libel and slander: privilege in connection with proceedings to disbar or discipline attorney," 77 A.L.R.2d 493. This is based upon the social interest of the public, the courts, and the bar itself in affording the fullest possible investigation by those lawfully entitled to do so, of grievances alleged against the conduct of attorneys, in order either to correct abuses complained of or else to expose such complaints as unfounded if the investigation so indicates.
We think this general rule applies in Louisiana and that the defendant Breaux's communication to the bar association was therefore privileged and non-actionable. (We expressly do not decide whether the privilege is absolute or qualified, since in either event the communication is privileged under the present circumstances, where no malice or unreasonable publication is shown.)
Counsel for appellee urges, however, that although the communication to the bar association may have been privileged, nevertheless it was also communicated to the defendant Breaux's son, who had typed the letter of complaint for him. It is suggested that thus there was actionable publication of the defamatory remarks by their communication to a third person not within the privileged relationship.
It is true that the communication of a non-privileged defamatory statement to even a single person constitutes actionable publication, Jozsa v. Moroney, 125 La. 813, 51 So. 908, 27 L.R.A.,N.S., 1041. This seems to include the communication even to a transcribing stenographer only, Modisette & Adams v. Lorenze, 163 La. 505, 112 So. 397; Annotation, "Libel and slander: communication to defendant's employee or business associate as publication or as privileged", 166 A.L.R. 114, 117.
However, the scope of a qualified privilege extends to the reasonably necessary use of clerical personnel (as herein) in the transmission of privileged communications, as well as to the incidental publication thereof to employees or associates of either the sender or the receiver, providing such incidental publication is in the usual course of business and is reasonably necessary to effect the communication of the privileged matter to those entitled to receive it. ALI Restatement of Torts, Section 604; 33 Am.Jr. "Libel and Slander", Section 189.

2. Loss of Magnolia suit not proved to have been caused by neglect of attorney.

By his reconventional demand, the defendant client seeks to recover the damages allegedly caused him by his attorney's negligence in prosecuting the Breaux v. Magnolia suit. The measure of recovery sought is the amount of the award he should have obtained in the Magnolia case, plus the court costs and attorney's fees unsuccessfully expended therein.
An attorney is liable to his client for the damages caused by the latter by the attorney's negligence in the handling of the client's business, providing that the client proves by a preponderance of the evidence that such negligence is the proximate cause of the loss claimed. King v. Fourchy, 47 La.Ann. 354, 16 So. 814; Dyer & Stevenson v. Drew, 14 La.Ann. 657; Spiller v. Davidson, 4 La.Ann. 171 (stating, for example, that it is necessary for the client "to show that he had a valid claim, which has been impaired or lost by the negligence or misconduct of the attorney," 4 La.Ann. 172); Thompson v. Lobdell, 7 Rob. 369; Breedlove v. Turner, 9 Mart. (O.S.) 353 (pointing out that reasonable misjudgment, especially when the law is unclear, is not actionable negligence). See also: Annotation, "Attorney's liability for negligence in preparing or conducting litigation", 45 A.L.R.2d 5.
*727 As this latter annotation notes, when a client sues his attorney for damages because of the alleged mishandling of litigation (either by reason of negligence or because of the attorney's failure to follow the client's instructions), the general rule is that the client bears the burden of proving that the attorney's neglect was the proximate cause of the client's loss. This ordinarily requires the client to prove by a preponderance of the evidence that, except for the neglect shown by the attorney, the litigation would have resulted in a decision more favorable to the client. See especially cited Annotation at Section 22, 45 A.L.R.2d 55.
Applying these legal principles, we find no error in the trial court's conclusion that the defendant has not preponderantly established that Breaux v. Magnolia was lost because of the plaintiff's failure to secure the admission into evidence of certain laboratory reports, or because he failed to take the testimony of those who conducted the tests which formed the substance of these reports.
The record in Breaux v. Magnolia was introduced in the present proceedings. As the reported appellate opinion therein (131 So.2d 615) shows, recovery was denied for the death of cattle owned by Breaux and others. The death was definitely proved to have resulted from arsenic poisoning. But the trial and appellate courts held that it was not proved that this arsenic poisoning was caused by Magnolia drilling operations, based on the strong and uncontradicted testimony of three witnesses that none of the material used in the drilling of the well by the defendant Magnolia contained arsenic.
The sole basis of the client's claim for damages caused by the loss of the suit is the client's insistence that he would have won the Magnolia suit if certain laboratory reports or their substance had been introduced in evidence. These reports showed that of many specimens, two (one from an old mut pit and one from a mud pit near the drilling site) showed "arsenic traces".
In the absence of arsenic in most of the specimens tested, including in those taken from around the drilling rig and those taken from Magnolia's drilling mud itself, and in the face of the very strong sworn testimony by two engineers and the manager of a supplier, we agree with the trial court that it would be speculative to conclude that the trial and appellate courts would have reached a different result in the Magnolia case had the laboratory reports in question been admitted into evidencethat is, we agree with the trial court that the client has not borne his burden of proving that the failure to secure the admission into evidence of the laboratory reports caused the denial of recovery to the client in Breaux v. Magnolia.
Counsel for appellant correctly contends that, in a suit by the client under these circumstances, the court is permitted and indeed required to consider whether the omitted evidence would have produced a different result in the other suit, and that such consideration by the court in the second suit does not constitute a prohibited collateral attack upon the judgment of the other court in the first suit. Pete v. Henderson, 124 Cal.App.2d 487, 269 P.2d 78, 45 A.L.R.2d 58 (1954); Annotation, "Measure and elements of damages recoverable for attorney's negligence with respect to maintenance or prosecution of litigation or appeal", 45 A.L.R.2d 62.
Although the trial court may thus have been in error in excluding evidence as to the amount of the award in the Magnolia suit had recovery been effected (Tr. 132-139), the trial court did permit the introduction into evidence in the present suit of all evidence offered by the client Breaux tending to show that the Magnolia case would have been won on the merits instead of lost, had the attorney secured the admission into evidence in the Magnolia case of the substance of the laboratory reports. *728 We do not reach the question of the exclusion of evidence proving the amount of recovery on the reconventional demand, therefore, since we have affirmed the trial court's conclusion that no recovery at all should be permitted on the reconventional demand.

3. Attorney's fees owed by client to attorney.

The trial court awarded the plaintiff three hundred dollars attorney's fees for his representation of the defendant in Breaux v. Magnolia. The record reflects that this is a reasonable fee for the services performed.
The plaintiff testified that he was to be compensated by a percentage fee if he recovered, and by a reasonable legal fee if no recovery resulted. This testimony was contradicted by the defendant Breaux, whose understanding of the fee arrangement was that he was only liable to pay a contingent fee in the event of recovery in Breaux v. Magnolia, but was not to owe any legal fee if there was no recovery.
We have no doubt that both the plaintiff and the defendant testified sincerely and to the best of their ability as to their recollection of the fee arrangement between the parties. The plaintiff, for instance, testified that, as a matter of practice, he did not enter into contingent fee arrangements which provided for no compensation to him in the event of loss of the suit.
Nevertheless, as the opinion of an attorney in the record indicates, the usual practice of the Calcasieu Parish Bar in providing for contingent fees in damage suits contemplated that the fee was payable only out of any recovery received.
The plaintiff testified that he had told the defendant when he was employed that he would take the case "for the percentage fee which usually obtains in such matters in damage suits, and for a reasonable fee for trial in the event that the judgment should be adverse." The defendant Breaux, who, according to the record, had had a fair amount of experience in the employment of attorneys, understood that he was retaining the plaintiff only upon the usual contingent fee basis. It is apparent that the defendant Breaux understood that he was employing the plaintiff on the "usual" contingent fee arrangement; the plaintiff's statement to such effect was unintentionally misleading, since it was also the plaintiff's intention to collect a reasonable suit fee in the event judgment was adverse.
Since such a fee arrangement is out of the ordinary, it was incumbent upon the plaintiff to explain the matter much more fully to the defendant Breaux. Further, in such instances, an attorney is in a better position than a client to protect himself, since the attorney can prepare a written fee arrangement.
The attorney seeking to recover a legal fee from a client has the burden of proving by a preponderance of the evidence the contract by which he seeks recovery. Johnson v. McCook, La.App. 2 Cir., 1 So.2d 359; Delahoussaye v. LaSalle, La.App. 1 Cir., 158 So. 696. Although we fully believe that the plaintiff testified truly as to his understanding of the fee arrangement, we do not feel, under the circumstances reflected by this record, that the plaintiff attorney has met his burden of proving his fee arrangement; we must therefore amend the trial court judgment so as to deny the plaintiff recovery for this item.
In so holding, we must state that we do not recognize any issue of veracity here. Mr. Toomer is a most reputable member of the bar, in whom this court has complete confidence. On the other hand, we have no reason to question the good faith of Mr. Breaux, whose position seems to be reasonable and in accord with the usual contingent legal fee arrangements made in damage suits. We think this is a situation where Mr. Toomer thought one *729 thing and Breaux another. Of course, however, the burden is on the plaintiff, who is suing on a contract, to prove that contract. We do not believe the record in this case supports that burden.
We feel, therefore, that the judgment should be amended so as to deny the plaintiff the recovery of $300.00 attorney's fees; as thus amended, the judgment is affirmed. The plaintiff is assessed with all costs of these proceedings.
Amended and affirmed.

On Application for Rehearing.
Rehearing denied.