**CABOT, CABOT & FORBES COMPANY, Plaintiff,**

v.

**BRIAN, SIMON, PERAGINE, SMITH & REDFEARN, A Louisiana Ordinary Partnership, A. Morgan Brian, Jr., Deutsch, Kerrigan & Stiles, A Louisiana Ordinary Partnership, Imperial Casualty & Indemnity Company, and XYZ Insurance Company, Defendants.**

Civ. A. No. 80–2060.

United States District Court, E.D. Louisiana.

July 21, 1983.

Peter J. Butler, Gayle A. Reynolds, New Orleans, La., Jerome P. Facher, Boston, Mass., for plaintiff.

Robert N. Ryan, New Orleans, La., for defendants Brian, Simon, Peragine, Smith, etc., A. Morgan Brian, Jr., Imperial Cas. & Indem. Co.

Francis G. Weller, New Orleans, La., for defendant Deutsch, Kerrigan & Stiles.

CASSIBRY, District Judge:

## I. INTRODUCTION

Plaintiff, Cabot, Cabot & Forbes Company ("Cabot"), brought this malpractice action against an attorney, A. Morgan Brian, the two law firms in which Mr. Brian was a partner when the alleged malpractice occurred, and their insurers. Brian represented Cabot in a state court action against Cabot for certain cost overruns incurred in a Baton Rouge construction job. After a bench trial, the state trial court rendered a judgment against Cabot for $830,305.05.

In this action, Cabot claims that Brian's failure to timely file a brief on Cabot's behalf with Louisiana's First Circuit Court of Appeal resulted in that court's dismissing Cabot's appeal as abandoned. Cabot also claims that Brian concealed that failure from Cabot and that as a result, Cabot suffered damages. When it brought the action, Cabot demanded trial by jury on all issues. Defendants moved to strike the jury demand on the issue of whether the Louisiana appellate court would have reversed the Louisiana trial court's decision if Brian had not failed to timely file Cabot's appeal. Finding this issue to be a question of law, not fact, for the court alone to decide, I granted defendants' motion to strike. After carefully studying Louisiana law pertaining to appellate legal malpractice, I ordered the parties in a March 3, 1982 Minute Entry to brief the following issues presently before me:

(1) Would the state appellate court have reversed the state trial court's decision casting Cabot, Cabot & Forbes in judgment?

(2) What damages should be awarded to Cabot, Cabot & Forbes in the event that it is determined that the state appellate court would have reversed the trial court's decision?

Before any trial on the merits of the malpractice claim could proceed, I noted, resolution of these legal issues was necessary because a showing that the appellate court would have reversed but for the attorney's negligence is an essential element of a legal malpractice action under Louisiana law. *See, e.g., C/M of Baton Rouge, Inc. v. Wood,* 341 So.2d 1181 (La.App. 1st Cir.1976). The reasoning behind this requirement is simple: if Cabot would not have won on appeal anyway, it could not show that Brian's alleged negligence—that is, his failure to timely file Cabot's appeal—caused it damage.

The Minute Entry further provided that if the state appellate court would have reversed the trial court's judgment, a jury trial would be held on Brian's liability for negligence and fraudulent concealment, as well as on other issues. Conversely, the order provided, if the state appellate court would not have reversed the trial court's judgment, Brian could not be liable for negligence under Louisiana law, and trial could proceed only on the remaining issues.

## II. Cabot's Motion to Vacate March 3, 1982 Order: The Effect of *Jenkins*

About seven months after I issued the March 3, 1982 Minute Entry directing the

parties to brief these two issues, the Supreme Court of Louisiana decided *Jenkins v. St. Paul Fire & Marine Insurance Co.*, 422 So.2d 1109 (La.1982). Cabot now claims that *Jenkins* changed Louisiana jurisprudence in attorney malpractice actions so fundamentally that it requires this court to vacate the March 3 order. After careful study of *Jenkins* and its application to this case, I find that it does not mandate vacating or changing in any way the first question posed in the order, i.e., the question whether the state appellate court would have reversed the state trial court's decision casting Cabot in judgment. However, *Jenkins* does require vacating the Minute Entry's second part, posing the question what damages should be awarded if the appellate court would have reversed the state trial court's judgment.

In *Jenkins,* the plaintiff-client sued his two former attorneys for failing to file suit until two days after prescription had run on his claim for damages for personal injuries sustained in a truck-train collision. A jury found for the plaintiff, but the court of appeals reversed, holding that plaintiff's contributory negligence[1] in causing the collision would have barred his recovery against the railroad company. The Louisiana Supreme Court affirmed but modified the appellate court's holding in one significant respect: the court concluded that once the client proves that his former attorney accepted employment and failed to assert the claim timely, the client has established a prima facie case and the negligent attorney bears the burden of proving that the mishandled claim or litigation would not have succeeded.

This conclusion represented a departure from the so-called "case within a case" approach previously taken by the court of appeals in *Jenkins,* 393 So.2d 851, and by several other Louisiana courts, *see, e.g., Toomer v. Breaux,* 146 So.2d 723 (La.App. 3d Cir.1962); *Lewis v. Collins,* 260 So.2d 357 (La.App. 4th Cir.1972). Under that approach, the plaintiff-client in a legal malpractice case was required to prove not only (1) that the attorney was negligent in handling the client's claim or litigation, but also (2) that the litigation would have been successful but for the attorney's negligence. In *Jenkins,* the Louisiana Supreme Court concluded that the latter requirement imposed too heavy a burden of proof on the plaintiff:

> [A] rule which requires the client to prove the amount of damages by trying the "case within a case" simply imposes too great a standard of certainty of proof. Rather, the more logical approach is to impose on the negligent attorney, at this point in the trial, the burden of going forward with evidence to overcome the client's prima facie case by proving that the client could not have succeeded on the original claim, and the causation and damage questions are then up to the jury to decide. Otherwise, there is an undue burden on an aggrieved client, who can prove negligence and causation of some damages, when he has been relegated to seeking relief by the only remedy available after his attorney's negligence precluded relief by means of the original claim.

422 So.2d at 1110.

 The mandate of *Jenkins* is, therefore, two-fold: Cabot merely has to show that its former attorney, A. Morgan Brian, Jr., failed to file Cabot's appeal timely.[2] Then, as *Jenkins* instructs, Brian must

---

1. Because the cause of action arose before Louisiana's legislative adoption of comparative negligence, the contributory negligence doctrine controlled in *Jenkins* and barred the plaintiff's claim altogether.

2. Brian's negligence is assumed only for purposes of this discussion because Brian claims Cabot cannot even maintain a cause of action for legal malpractice against him. He contends that Cabot would have obtained no better result on appeal anyway, thus requiring dismissal of Cabot's legal malpractice claim. Ironically, Brian is thus put in the unenviable position of arguing why he would have lost the appeal he had been preparing for his former client.

carry the burden of showing that Cabot's appeal would not have succeeded.[3]

Relying on the above-quoted excerpt from *Jenkins,* Cabot contends that the jury must decide (1) whether Brian was negligent, (2) whether that negligence caused damage and (3) the amount of damages to be awarded Cabot. Cabot has demanded and is certainly entitled to a jury to resolve all factual questions arising from its legal malpractice claim. Two of the three questions raised by Cabot's claim are questions of fact—Brian's alleged negligence and the amount of damages—questions that a jury must decide under *Jenkins,* 422 So.2d at 1110.

The third question—whether the defendant's negligence proximately caused plaintiff damage—is usually one of fact. In this case, however, determining whether Brian's failure to appeal caused Cabot any damages requires determining whether that appeal would have been successful. *Nelson v. Appalachian Insurance Company of Providence,* 399 So.2d 711 (La.App. 1st Cir.1981); *C/M of Baton Rouge, Inc. v. Wood,* 341 So.2d 1181 (La.App. 1st Cir.1976); *Alfonso v. McIntyre,* 387 So.2d 1348 (La.App. 1st Cir.1980); *Vessel v. St. Paul Fire & Marine Ins. Co.,* 276 So.2d 874 (La.App. 1st Cir. 1973). The rationale for requiring this determination is as follows: If the appeal would not have succeeded and the Louisiana Court of Appeals would have affirmed the trial judge's decision, Brian's negligence could not have caused Cabot any damage, at least none recognized in Louisiana. Conversely, if the appeal would have succeeded in reversing the lower court's judgment and ultimately obtaining a more favorable result, then Cabot indeed sustained damage because of Brian's negligence. *C/M of Baton Rouge v. Wood,* 341 So.2d 1181 (La.App. 1st Cir.1976).[4]

■ Not surprisingly, past Louisiana courts confronted with making this causation determination have not delegated it to the jury; rather, they have consistently recognized that it raises a question of law, not fact, within the exclusive province of the court, not jury, to decide. *C/M of Baton Rouge v. Wood, supra; Nelson v. Appalachian Ins. Co. of Providence, supra.* Courts in other jurisdictions have done likewise. *See, e.g., Chicago Red Top Cab Ass'n, Inc. v. Gaines,* 49 Ill.App.3d 332, 364 N.E.2d 328, 7 Ill.Dec. 167 (1977); *Croce v. Sanchez,* 256 Cal.App.2d 680, 64 Cal.Rptr. 448 (1967), *cert. denied,* 391 U.S. 927, 88 S.Ct. 1827, 20 L.Ed.2d 666 (1968); *McAleenan v. Massachusetts Bonding & Ins. Co.,* 173 App.Div. 100, 159 N.Y.S. 401 (1916), *aff'd* 219 N.Y. 563, 114 N.E. 114 (1921). Noting this consensus, two commentators have concluded that "[t]his decision must be made by the trial judge as an issue of law, based upon review of the transcript and record of the underlying action, the argument of counsel, and subject to the same rules of review as should have been applied by the appellate courts." Mallen & Levit, *Legal Malpractice,* § 583 at 738 (1981).

Moreover, *Jenkins* does not alter this conclusion. *Jenkins* did not involve, as this

---

**3.** The reason for placing this burden on the defendant-attorney rather than the plaintiff-client is based in fairness, as the *Jenkins* court noted: "The client's problem is frequently compounded when the attorney's negligence and the lapse of time has left a new attorney to search for stale evidence and has prevented or severely hampered thorough and effective preparation of the claim for trial." 422 So.2d at 1110, n. 2. This reason applies with equal force here. Brian ought to be far more familiar with the evidence and presumably far better able to carry the burden.

**4.** As the *C/M of Baton Rouge* court explained, Assuming that the defendant was negligent in his failure to timely perfect the plaintiff's appeal, it is necessary to determine if the defendant's negligence caused any damage to the plaintiff for which the plaintiff could recover. *Vessel v. St. Paul Fire & Marine Insurance Company,* 276 So.2d 874 (La.App. 1st Cir.1973); *Toomer v. Breaux,* 146 So.2d 723 (La.App. 3d Cir.1962). The plaintiff contends first, that it was damaged to the extent that the defendant's negligence cost it an opportunity to appeal the adverse decision, which decision if reversed would have entitled plaintiff to judgment in its favor. If, however, the decision of the trial court in *C/M of Baton Rouge, Inc. v. Murray* is not reversible, then plaintiff was not damaged by the loss of the opportunity to appeal. 341 So.2d at 1182.

case does and as *Nelson, Wood* and *Alfonso* did, a client's claim that his attorney mishandled an appeal. Thus, the *Jenkins* court never reached the question whether the judge or jury should decide if the client would have prevailed on appeal. *Wood, Alfonso* and *Nelson* did address this question, and they require me, not the jury, to determine whether the Louisiana Court of Appeal would have reversed the lower court decision casting Cabot in judgment.[5]

### III. Would the State Court of Appeals Have Reversed?

Cabot claims that Louisiana's First Circuit Court of Appeals would have reversed the state trial court's decision on any of several grounds. Before these grounds can be addressed, however, a brief summary of the underlying action and trial court ruling against Cabot is necessary.

#### A. The Underlying Action Against Cabot

The Louisiana state court proceedings that precipitated this malpractice action concerned the construction of One American Place, an office building in Baton Rouge, Louisiana. The plaintiff in that underlying lawsuit, Haas & Haynie-Tudor Construction Company ("HHT"), was the general contractor on the job; the defendant, Cabot, was the developer. HHT brought the action to recover in quantum meruit, claiming that Cabot had failed to pay HHT for construction work it had done. Cabot defended on the ground that quantum meruit did not apply because the parties had entered into a contract for a fixed base bid price of $5,181,000 plus any negotiated additions. Cabot also asserted a reconventional demand for alleged overpayment and for costs of remedial work.

After a lengthy non-jury trial in October and November 1977, Judge Melvin A. Shortess of the 19th Judicial District Court found that Cabot and HHT had contemplated but never consummated an agreement because they misunderstood each other. Thus, they failed to reach a "meeting of the minds" and never had a contract.

The court found no merit in Cabot's claim that HHT's own incompetence and inefficiency caused its cost overruns; rather, the court found it "much more likely that the problems and cost overruns on the job were due to the piecemeal methods of planning and design used by CCF (Cabot)." Consequently, the court dismissed Cabot's reconventional demand and concluded that HHT was entitled to quantum meruit recovery.

Not surprisingly, Cabot and HHT introduced greatly conflicting evidence of the amount of quantum meruit recovery to which HHT was entitled. HHT sought $830,305.05, which HHT said represented its total job costs plus 9 percent for profit and overhead, less the total amount Cabot had already paid it. Though the court's opinion does not provide the precise cost figures HHT used to reach this amount, the trial record suggests that HHT arrived at the $830,305.05 amount in the following fashion:

| | | | |
|---|---|---|---|
| HHT's total costs plus 9% profit & overhead | = | | $7,513,945 |
| **CABOT'S TOTAL PAYMENTS** | | | |
| (1) Base Bid Work | = | $4,679,977 | |
| (2) Settlement of earlier dispute | = | 546,023 | |
| **OTHER PAYMENTS TO HHT** | | | |
| (3) Schedule of Value Subcontractors | = | 1,457,640 | |
| TOTAL PAYMENTS TO HHT | = | | $6,683,640 |
| HHT'S TOTAL COSTS LESS TOTAL PAYMENTS RECEIVED | | | $ 830,305 |

In response, Cabot claimed that HHT was entitled to no quantum meruit recovery at

---

**5.** Cabot's position that the jury should make this decision would allow—indeed, require—jurors to sit as appellate judges, review some 2,000 pages of trial transcript, and decide whether Judge Shortess committed reversible error. Cabot's position is particularly troublesome because Cabot has not suggested that any of the judge's findings are clearly errone-

ous. Thus, the jury would be left to decide the appeal only on issues of law, such as whether Judge Shortess applied the proper test in a quantum meruit case under Louisiana law. Instructing the jury on this issue alone would pose a myriad of legal and practical problems Cabot has failed to address.

all. Cabot cited well-established Louisiana law limiting HHT's recovery under quantum meruit to the amount by which Cabot has been enriched by HHT's services and materials. *See, e.g., Custom Builders & Supply, Inc. v. Revels,* 310 So.2d 862 (La. App. 3d Cir.1975).[6] Cabot's two construction experts, Irving Fogel and Marvin Banton, estimated that the value of HHT's work—the amount by which Cabot had been enriched—was approximately $4.8 or $4.9 million, an amount far less than the $5.2 million Cabot had already paid HHT. As a result, Cabot claimed not only that it had overpaid HHT but also that Cabot's enrichment or enhancement value was vastly less than the $7.5 million HHT had claimed for its services, materials and 9 percent profit margin. Thus, Cabot contended, HHT was not entitled to any quantum meruit recovery.

The trial court rejected Cabot's contention and disregarded Cabot's estimates of its enrichment value because neither estimate had considered Cabot's inefficiency or the construction delays it had caused. In addition, the court held that HHT had proven all its costs for materials and services to the court's satisfaction. The court granted HHT's request for an additional 9 percent for profit and overhead and awarded HHT the $830,305.05 it had sought.

### B. *Reason for Reversal: The Enhancement Value Limitation*

In considering the merits of Cabot's would-be appeal, I hasten to reiterate that *Jenkins* has lifted from Cabot the burden of proving that its appeal would have succeeded; *Jenkins* shifts to Brian the burden of proving that Cabot's appeal would not have succeeded. Hence, Brian must prove that Louisiana's court of appeal would not have reversed the trial court's decision on any one of 10 grounds Cabot has asserted.

6. *Custom Builders* recognized a double limitation on the amount of recovery under quantum meruit:
1) plaintiff cannot recover more than the actual value of his services and materials plus a fair profit; and

First and foremost, Cabot asserts that the trial court erred by failing to follow *Custom Builders* and other Louisiana cases limiting HHT's recovery to the amount by which HHT had enriched Cabot. I agree, and find that Brian has failed to prove that the court of appeal would not have overturned the lower court decision. I find that the state appellate court would have reversed and remanded the case to the trial court for further findings on the enrichment value question. Accordingly, I need not reach the other asserted grounds for reversal.

▌ Louisiana courts have consistently recognized a double limitation on the amount of recovery allowed under quantum meruit:

(1) [P]laintiff cannot recover more than the actual value of his services and materials, plus a fair profit, and

(2) plaintiff cannot recover more than defendant was enriched by plaintiff's services.

*Custom Builders & Supply, Inc. v. Revels,* 310 So.2d 862, 866 (La.App. 3d Cir.1975); *Swiftships, Inc. v. Burdin,* 338 So.2d 1193, 1196 (La.App. 3d Cir.1976); *See also Deax-Duck Lumber & Supply Co. v. Allen,* 10 So.2d 242 (La.App. 2d Cir.1942); *Sound Doctor Recording Studio, Inc. v. Conn,* 391 So.2d 520 (La.App. 3d Cir.1980). The plaintiff—here, HHT—bears the burden of proving the value of the labor and materials he has furnished; once he does so, he makes a prima facie showing for quantum meruit recovery. *Swiftships, supra,* at 1196. The defendant—here, Cabot—then bears the burden of establishing that the amount the plaintiff claims exceeds the amount by which he was enriched. *Swiftships, supra.*

In this case, then, HHT made a prima facie showing by proving that it had expended labor and materials valued at more than $7 million. To satisfy its burden of showing enrichment value, Cabot then in-

2) plaintiff cannot recover more than defendant was enriched by plaintiff's services.
310 So.2d at 866.

troduced evidence through its experts, Fogel and Banton, that the value of HHT's services and materials was, at most, $4.9 million. This evidence was uncontradicted and was, in fact, the only evidence in the record showing Cabot's enrichment. Nonetheless, the trial court disregarded it altogether because it did not take into account Cabot's inefficiency on the job and the delays Cabot had caused. Conspicuously absent from the trial court's findings of fact is any finding of enrichment value.

Though free to assign Cabot's evidence of enrichment value whatever weight it believed the evidence deserved, the trial court should have made a specific finding of fact setting forth the enrichment value and the evidence relied upon to determine it, as the courts did in *Custom Builders, Inc. v. Revels,* 310 So.2d 862, 866 (La.App. 3d Cir.1975) and *Deax-Duck Lumber & Supply Co. v. Allen,* 10 So.2d 242 (La.App. 2d Cir.1942). In *Custom Builders,* for example, the defendant's expert appraiser testified that the plaintiff's home improvement work enhanced the value of the home by $22,577. The plaintiff's expert set that value between $23,611 and $23,828. The court accepted the defendant's estimate, specifically held that the work enhanced the home's value by $22,577, and awarded that sum to plaintiff, less the amount previously paid. *Id.*

As *Custom Builders* illustrates, there is an important reason why Louisiana courts must make enrichment value findings—and why the trial court should have made one in this case: to ensure that defendants in quantum meruit actions pay only for those services and materials that inure to their benefit. Without an enrichment value limitation, defendants such as Cabot would be required to pay for *any* services and materials provided by plaintiffs such as HHT. Indeed, without an enrichment value limitation, Cabot would even have to pay HHT for unnecessary, unjustifiable services and materials that failed to enrich Cabot. Such a result would invite expense-padding and

leave quantum meruit defendants at the plaintiffs' mercy. Ironically, it would lead to unjust enrichment of quantum meruit plaintiffs, the very parties who seek equitable relief and assert that defendants have been unjustly enriched.

By not making any enrichment value finding, then, the trial court failed to take into account one of the two key limitations that *Custom Builders* and *Swiftships* required it to determine and apply.[7] For this reason, the Louisiana court of appeal would have reversed the lower court's decision and remanded the case to the trial court with instructions that it find the amount by which Cabot was enriched. To make an informed finding, the trial court, as trier of fact, might have had to take additional evidence from both parties at a new trial, if necessary. HHT's recovery then would be limited accordingly.

## IV. CONCLUSION

Even though the state court of appeal would have reversed the lower court ruling, that reversal does not necessarily mean that Cabot may maintain a cause of action for legal malpractice. On remand for a new trial on the enrichment value issue, for example, the state trial court could have found that Cabot's enrichment exceeded HHT's costs and that, as a result, Cabot still owed HHT $830,305.05. In that event, Brian's failure to appeal would not have caused Cabot any damage, and Cabot would be unable to sustain a cause of action. Thus, to maintain its legal malpractice action, Cabot would have to achieve a better result on remand than it did in the state court trial; at minimum, Cabot would have to do better than the $830,305 awarded against it.

Fortunately for Cabot, the Louisiana Supreme Court in *Jenkins, supra,* removed this burden of proof from the plaintiff-client in a legal malpractice action and placed it on the defendant-attorney, as A. Morgan Brian himself concedes. Hence, under *Jenkins,* Brian bears the burden of showing at trial

---

7. Significantly, Louisiana state courts have recognized no exceptions to the double limitation requirement.

(1) that Cabot's enrichment value exceeds the value of HHT's services and materials, plus a fair profit;[8] and (2) as a result, that Cabot still would have been cast in judgment for at least $830,305.

If Brian meets that burden, his failure to appeal will have caused no damage to Cabot, and Cabot's legal malpractice action will be dismissed. If Brian fails to carry that burden, then Cabot's cause of action for legal malpractice will stand and trial will proceed on all remaining issues.

8. Cabot claims that Louisiana law does not permit HHT, as the plaintiff in the quantum meruit action, to recover a fair profit. Hence, Cabot contends, the state trial court erred by awarding HHT 9 percent for profit and overhead.

Cabot's contentions are without merit. Only a few months ago, this issue was resolved by the same court that would have decided Cabot's appeal—Louisiana's First Circuit Court of Appeal—in *Villars v. Edwards,* 412 So.2d 122 (La.App. 1st Cir.1982). The *Villars* court upheld a lower court award of a 20 percent profit margin to a building contractor in a quantum meruit action, even though the contractor's workmanship was poor. *Id.* at 126. In view of this holding, the First Circuit undoubtedly would have sustained Judge Shortess' award of a nine percent profit margin to HHT, particularly since HHT's workmanship, unlike that of the *Villars* contractor, was never found to be poor.

Cabot asserts two reasons why *Villars* should not be controlling. Neither reason is persuasive. First, Cabot contends that *Villars,* if followed, would foster a policy by which profit was awarded despite shoddy workmanship. The *Villars* court itself wisely foresaw this problem and resolved it by concluding "that Villars, (the contractor), having been paid for work performed, must be held liable for whatever damages are attributable to his poor workmanship." 412 So.2d at 126.

Second, Cabot attempts to distinguish its facts from *Villars* on the ground that Cabot and HHT, unlike the parties in *Villars,* terminated their construction contract by mutual consent in a formal settlement agreement. The import of that agreement, Cabot asserts, was to limit HHT's recovery by excluding profits. However, nowhere in the agreement did HHT specifically agree not to pursue any claim it might have for profits; HHT merely agreed to limit its right to recovery to quantum meruit, and, as *Villars* held, quantum meruit recovery includes recovery of "the amount of materials and labor actually expended, plus a fair profit." 412 So.2d 125, *citing Skains v. White,* 391 So.2d 1327 (La.App. 2d Cir.1980); *McMorris v. Pepperdene,* 292 So.2d 892 (La.App. 1st Cir.1974), *writ denied* 294 So.2d 840 (La.1974).